**NEW YORK CITY HOUSING DEVELOPMENT CORPORATION, Petitioner,**

v.

**William T. HART, Judge, United States District Court for the Northern District of Illinois, Respondent.**

No. 86–1695.

United States Court of Appeals, Seventh Circuit.

Submitted May 21, 1986.

Decided July 21, 1986.

Lee A. Freeman, Jr., Freeman, Freeman & Slazman, P.C., Albert F. Ettinger, Chicago, Ill., for petitioner.

James Espiotto, Chapman & Cutler, Ann Acker, Chicago, Ill., for respondent.

Before FLAUM, EASTERBROOK and RIPPLE, Circuit Judges.

PER CURIAM.

This petition for mandamus grows out of suits seeking an injunction against the redemption of certain bonds by defendant New York City Housing Development Corp. (HDC). The redemption was planned for May 1, 1986. The case was assigned to Judge Hart on April 18, and he held several emergency hearings. HDC resisted on grounds of jurisdiction and venue, as well as on the merits.

Judge Hart revealed on April 18 that his wife owned interests in trusts that included municipal bonds, including trusts organized by John Nuveen & Co. and Van Kampen Merritt, Inc., the two plaintiffs. He also revealed that neither plaintiff is a trustee for any of the trusts, and that none of the trusts holds any of the bonds sought to be redeemed. This apparently satisfied HDC until April 29, when on the eve of Judge

Hart's ruling HDC made an oral motion for recusal. The next day—before Judge Hart could rule—HDC filed a petition for a writ of mandamus. This petition asserted that Judge Hart is disqualified under 28 U.S.C. § 455(b)(4) because he "has a financial interest in the subject matter in controversey ... or any other interest that could be substantially affected by the outcome of the proceeding." According to the petition, many municipal bonds have the same sort of call provisions included in defendant's bonds, the decision could affect many bonds and hence the value of bond trusts and bond funds in which the judge has an interest. HDC sought to avoid in this way the statutory rule that "[o]wnership in a mutual or common investment fund that holds securities is not a 'financial interest' in such securities unless the judge participates in the management of the fund". 28 U.S.C. § 455(d)(4)(i). The disqualifying interest, HDC insisted, was the trusts themselves and not indirect ownership in defendant's bonds.

On April 30 Judge Hart denied the plaintiffs' motion for a preliminary injunction, refused to dismiss the suits, and refused to disqualify himself. On May 7 he filed a written opinion explaining why he had refused to dismiss the suits and declined to issue an injunction. He also changed his mind and recused himself. He explained once more that the plaintiffs are not trustees of his wife's funds, that he has never dealt directly with the plaintiffs, and that the funds include none of HDC's bonds. But he continued:

> Except in the most unusual circumstances (ordinarily not present in a large district) a judge should not have to hear any case in which a party asserts a belief that the judge will not be impartial. The burdens of judicial office are simply too heavy to add to them the problem of a claim of judicial partiality and litigation on this issue. I do not want the integrity of the court or my ability to be impartial to be an issue in any case. I believe in liberal recusal and have heretofore granted every motion for recusal presented to me.

On reflection, I believe that I would have granted a timely motion for recusal by resolving any doubts in defendant's favor had I not thought the oral motion to be simply a tactic to prevent even the consideration of emergency relief. Therefore, having disposed of the emergency issues and consistent with my views and past practices, I now recuse myself.

█ This moots HDC's request for a writ that would require the district judge to recuse himself. HDC nonetheless asks us to vacate his orders, so that the judge to whom the case has been transferred may decide all matters afresh. This request, too, is moot in part. Nuveen has dismissed its suit in the district court, and because this prevents review of the decision with respect to it, the district court's judgment must be vacated in part. *United States v. Munsingwear, Inc.,* 340 U.S. 36, 39–40, 71 S.Ct. 104, 106–07, 95 L.Ed. 36 (1950). The suit filed by Van Kampen Merritt is pending in the district court, however, and we deny the request to vacate the opinions and orders to the extent they affect it.

The first question is whether HDC's request is within our power to decide. The case is in mid-stream, and an appeal from the final judgment would give HDC an opportunity to raise all objections to intermediate orders. Yet we held in *United States v. Balistrieri,* 779 F.2d 1191, 1204–05 (7th Cir.1985), that some objections to a judge's failure to recuse himself (or, as in *Balistrieri* and this case, a belated grant of a motion to recuse) may not be raised on appeal. Sometimes the disqualification of a judge is required, as under 28 U.S.C. §§ 144 and 455(b), because of actual or imputed bias. Disqualification under these statutes is for the benefit of the parties, and errors may be assigned on appeal as grounds of reversal. But § 455(a), which requires recusal when a judge's "impartiality might reasonably be questioned", is designed for the benefit of the judicial system as a whole, and even if a judge errs in failing to disqualify himself promptly, the error does not call into question the sub-

stantive decisions of the court. Because procedural rulings that do not affect the merits of the case (the "substantial rights *of the parties*", see Fed.R.Civ.P. 61) are not good reasons to reverse the final judgment, we concluded in *Balistrieri* and *United States v. Murphy*, 768 F.2d 1518, 1539–41 (7th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1188, 89 L.Ed.2d 304 (1986), that decisions taken before the filing of a motion under § 455(a) are not reviewable at all, and that questions under § 455(a) may not be raised on appeal from the final decision. Cf. *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 313–14 (7th Cir.1986). So if the problem is one of the appearance of impropriety, as the district judge concluded, it is mandamus or nothing, and *Balistrieri* expressed a strong preference for mandamus over nothing. See also, e.g., *Pepsico, Inc. v. McMillen*, 764 F.2d 458, 460 (7th Cir.1985); *SCA Services, Inc. v. Morgan*, 557 F.2d 110 (7th Cir.1977). (We need not decide whether questions under § 455(b), which may be raised on appeal, also may be raised by mandamus.)

█ Perhaps, however, recusal under § 455(a) runs prospectively only, so that all orders entered before the district judge removes himself (or the court of appeals issues a writ of mandamus) stand. The other option is that orders rendered after the filing of the motion must be vacated— by the district judge or by writ of mandamus—if the motion ultimately is granted. We think the latter view best carries out the purposes of § 455. *Murphy* surveyed the cases involving the appearance of impropriety and concluded that none had required the court to "set aside decisions that had been taken before any party asked for recusal." 768 F.2d at 1539. Several cases, on the other hand, have held or assumed that decisions taken after the filing of a justified motion must be set aside. We do not think that *Balistrieri* questions this conclusion. It would be undesirable to consider case by case whether the post-motion orders of the judge should be set aside; the inquiry would have no particular focus, and it would present especially difficult prob-

lems for a successor district judge asked to examine the propriety of his colleague's conduct. Neither § 455 nor the legislative history of its amendment in 1974 addresses the question. There is no inevitable answer, but the position that provides the greatest measure of safety for the judicial system as a whole is one that vacates all decisions taken after the filing of a justified motion to disqualify a judge under § 455(a).

█ This makes it necessary to decide whether the district judge was required to recuse himself under § 455. If he was, then his orders of April 30 and May 7 must be vacated. The fact that he *did* recuse himself does not show that he had to, however, and a judge's unnecessary recusal ought not to require work to be redone by his successor. We may not be authorized to vacate the district judge's order of recusal, see *Hampton v. City of Chicago*, 643 F.2d 478 (7th Cir.1981), and at all events no one has asked us to do so, but if the order was unnecessary we need not add ripples to the splash. We conclude that the order was indeed unnecessary; Judge Hart is not disqualified.

HDC relied on § 455(b)(4), arguing that the disposition of the case may affect the value of bond funds, including those in which the district judge has an interest. Judge Hart found this argument insufficient, as do we. The value of many assets, even the performance of the economy as a whole (and hence all assets), may depend on rules of law. It could be said that no judge who owns a house should render a decision that potentially affects the value of real estate in general, that no judge who owns stock should decide a case under the securities or antitrust laws, and so on. Effects of this sort are both ubiquitous and too indirect to require disqualification. Cf. *Union Carbide Corp. v. U.S. Cutting Service, Inc.*, 782 F.2d 710, 714–15 (7th Cir. 1986). The effects are small, and almost every judge will have some remote interest of this sort. Moreover, the effects may have offsets that are difficult to predict. A

decision under the securities laws that diminishes somewhat the value of bonds may increase somewhat the value of stocks; no judge with a diversified portfolio will be able to predict the effect on his wealth, and therefore there is little risk of either actual bias or the appearance of impropriety.

These offsetting effects may be particularly strong within a fund of stocks or bonds. A judge may hold a mutual fund that contains AT & T stock. Yet the judge is expressly authorized by § 455(d)(4)(i) to sit in a case involving AT & T, in part because the fund may sell the stock before the judge decides the case, in part because a change in the value of AT & T stock will have a small effect on the fund as a whole, and in part because a decision that helps or hurts AT & T may have the opposite effect on MCI, GTE, or other securities in the fund, washing out the effect on the judge's portfolio. When Congress amended § 455 in 1974, it designed § 455(d)(4)(i) as a safe harbor, a way for judges to hold securities without needing to make fine calculations of the effect of a given suit on their wealth. HDC wants us to do exactly what § 455(d)(4)(i) prevents—to ask whether a decision could affect the value of the assets held by a mutual fund and then to order disqualification. Section 455(d)(4)(i) states that the ownership of a fund is "not a 'financial interest'" in the fund's securities, unless the judge participates in the management of the fund. Because the underlying assets are not a "financial interest" of the judge it is unnecessary and inappropriate to inquire how a case might affect the value of the fund's assets. The statute operates in a mechanical fashion. Just as § 455(b)(4) requires disqualification when there is any financial interest, however small, *In re Cement Antitrust Litigation*, 688 F.2d 1297, 1308 (9th Cir.1982), so § 455(d)(4)(i) eliminates any inquiry into the size of the likely effect of a decision on the value of securities held through a mutual fund.

 The district judge nonetheless thought that his impartiality might reasonably be questioned within the meaning of § 455(a). To the extent this introduces through the back door an inquiry into the substantiality of the effect on the value of assets held by the mutual fund, it is an inappropriate use of § 455(a). This inquiry would prevent § 455(d)(4)(i) from acting as a safe harbor, once again calling on judges to decide whether a financial interest is sufficiently substantial to require disqualification. Moreover, § 455(a) requires disqualification only when a judge's decision might "reasonably" be questioned. The inquiry is objective, from the point of view of a reasonable person with access to all of the facts. See *Pepsico* and *Union Carbide*. See also, e.g., *United States v. DeLuna*, 763 F.2d 897, 907 (8th Cir.), cert. denied, —— U.S. ——, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985). A reasonable person would not question the impartiality of a judge who holds nothing but well diversified mutual funds.

 The district judge's opinion suggests another ground, that a judge should recuse himself whenever a party "asserts a belief that the judge will not be impartial." Section 455(a) then becomes a form of peremptory challenge against the judge. The statute does not create such a challenge, however. That is the point of limiting disqualification to a case where the judge's "impartiality might *reasonably* be questioned." We held in *SCA Services*, 557 F.2d at 113 & n. 8, that the 1974 amendments to § 455 abolish any "duty to sit"; a judge need not and should not decide close calls in favor of hearing the case. See also *United States v. Haldeman*, 559 F.2d 31, 139 n. 360 (D.C.Cir.1976) (en banc), cert. denied, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977); *United States v. Wolfson*, 558 F.2d 59, 63 (2d Cir.1977); H.R. Rep. No. 93–1453, 93d Cong., 2d Sess. 2, 5 (1974), reprinted in 1974 U.S.Code Cong. & Admin.News 6351, 6355; Comment, *Disqualification of Federal Judges for Bias or Prejudice*, 46 U.Chi.L.Rev. 236, 241–42 (1978). A judge may decide close calls in favor of recusal. But there must first be a close call. As we put it in *Suson v. Zenith Radio Corp.*, 763 F.2d 304, 308–09 n. 2 (7th

Cir.1985), a "district judge is ... obligated not to recuse himself without reason just as he is obligated to recuse himself when there is reason." See also *United States v. Baskes*, 687 F.2d 165, 170 (7th Cir.1981). A judge who removes himself whenever a party asks is giving that party a free strike, and Congress rejected proposals (now in effect in some states) to allow each party to remove a judge at the party's option.

Automatic disqualification allows the party to manipulate the identity of the decisionmaker and may be no more healthy for the judicial system than is the denial of a borderline motion. At least this is the belief reflected in the existing statutes. And ready recusal, coupled with a rule that requires the judge to whom the case is reassigned to revisit all of the rulings after the filing of the motion to disqualify, would multiply the work of judges who already have much to do. The second judge would need to become familiar with the case, duplicating the work of the first. Then the second judge might need to reconsider questions already resolved by the first judge. We do not doubt that Congress may authorize or require disqualification of judges whenever a party so moves. This may even be a wise course for the reason the district judge gave: "The burdens of judicial office are simply too heavy to add to them the problem of a claim of judicial partiality and litigation on this issue." But every benefit has a cost: ready recusal benefits the judge who steps aside, and the litigant who sought this outcome, but it may injure the judge who must take over the case and the litigant aggrieved by the substitution. Until Congress decides that the costs of recusal on demand are worth bearing, judges must evaluate each motion to decide whether under objective standards the judge's impartiality might *reasonably* be doubted. The district judge did not evaluate the motion under this standard. Had he done so, he would not have recused himself. Whether Judge Hart should be reassigned to the case rests in the sound discretion of the Executive Committee of the district court.

VACATED IN PART AND DENIED IN PART.