Dennis H. ANDERSEN and Benita I. Andersen, Plaintiffs,

v.

Judge Stanley J. ROSZKOWSKI, et al., Defendants.

No. 87 C 20451.

United States District Court, N.D. Illinois, W.D.

Feb. 22, 1988.

Dennis and Benita Andersen, pro se.

William A. Hellyer, Crystal Lake, Ill., James C. Spelman, Rockford, Ill., Curtis R. Tobin, Johnson, Tobin & Ramon, Belvidere, Ill., Charles J. Prorok, State's Attorney's Office, Civ. Div., Rockford, Ill., Roger T. Russell, Boone County State's Atty., Belvidere, Ill., James O. Nolan, David A. Belofsky, Clausen, Miller, Gorman, Caffrey & Witous, P.C., Chicago, Ill., Dennis P. O'Sullivan, O'Sullivan, Freek & O'Sullivan, Belvidere, Ill., Michael J. Duggan, James P. Bartley, Klein, Thorpe & Jenkins, Ltd., Chicago, Ill., Thomas W. Conklin, Howard L. Lieber, Elizabeth L. Wiley, Conklin & Adler, Chicago, Ill., David H. Towns, Belvidere, Ill., John L. Olson, Gregory E. Barrett, Schlueter, Ecklund, Olson, Barrett & Moore, Rockford, Ill., Michael F. O'Brien, Clark, McGreevy & Johnson, Rockford, Ill., David P. Faulkner, Jeffry S. Spears, Lord, Bissell & Brook, Rockford, Ill., Peter V. Bustamante, Ill. Atty. General's Office, Chicago, Ill., George W. Spellmire, Thomas P. McGarry, Susan A. Tweet, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., Peter S. Switzer, Richard K. Van Evera, Barrick, Switzer, Long, Balsley & Vanevera, Rockford, Ill., for defendants.

Gail C. Ginsberg, U.S. Attorney's Office, Chicago, Ill., for U.S.

Teresa Ralston McLaren, pro se.

Charles J. Prorok, Asst. State's Atty., Rockford, Ill., for Evelyn Zawlocki and Frank Calacurcio.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

Now before the Court are plaintiffs' motion for leave to file their Amended Complaint and their motion to disqualify all of the federal judges in the Seventh Circuit and transfer this case to an "out-of-the-Seventh-Circuit-judge." After reviewing these motions and the Amended Complaint, the Court rules as follows: plaintiffs' Amended Complaint sufficiently complies with Fed.R. Civ.P. 8 and 9(b); the Court is not required to disqualify itself and transfer this case to a federal judge outside the Seventh Circuit; and the Amended Complaint fails to state a claim. For the reasons set forth, the Court dismisses plaintiffs' Amended Complaint with prejudice.

### I. *Introduction*

This is a case about farmers who have lost their farm and their farm equipment. The plaintiffs, Dennis and Benita Andersen, owned and operated a farm in Boone County, Illinois. In 1985, in a series of four state court foreclosure and replevin actions instituted by various lending insti-

tutions, Dennis and Benita Andersen lost their farm and their farm equipment for failing to meet their debt obligations. Amended Complaint ¶¶ 111(a)(b)(c)(d). The Illinois circuit court judges entered final orders in these cases, and the Andersens did not appeal.

Instead of taking an appeal, the Andersens turned to the federal courts. They filed a "Civil Rights" lawsuit and a "RICO" lawsuit in the Western Division of the United States District Court for the Northern District of Illinois. *Dennis and Benita Andersen v. R. Robert Funderburg, et al.,* 86 C 20263 ("RICO case"); *Dennis and Benita Andersen v. Judge Robert French, et al.,* 86 C 20329 ("Civil Rights case"). The federal district court judge assigned to these cases dismissed them both on the merits, and the Andersens appealed the dismissal of their RICO case. The Seventh Circuit affirmed the district judge's dismissal. *Dennis H. Andersen and Benita I. Andersen v. R. Robert Funderburg, et al.,* 818 F.2d 32 (7th Cir.1987) (unpublished opinion); Amended Complaint ¶¶ 104, 125.

The Andersens then filed another lawsuit in the Western Division of the United States District Court for the Northern District of Illinois, and the case was assigned to the same federal district court judge who dismissed their RICO and Civil Rights cases. In their new lawsuit, the Andersens sued that federal district court judge and the Seventh Circuit judges who ruled on their RICO and Civil Rights cases, all of the state court judges who ruled on their state court foreclosure and replevin cases, and a host of public officials, attorneys, and other individuals, all involved, one way or another, in one or more of the four state court and two federal court lawsuits. In all, the Andersens sued eighty-two individually-named defendants and "50 John Does and 50 Jane Roes." The Andersens alleged that all of the named judges acted under some kind of a "malign influence" and that all of the defendants, including the judges, engaged in a "fraud on the court" against the Andersens. Because the federal district court judge was one of the individually-named defendants, the judge disqualified

himself from ruling on the case on October 8, 1987. The case was then transferred to this Court.

Soon after the Andersens' case was transferred to this Court, individual defendants began filing Fed.R.Civ.P. 12(b)(1) and (b)(6) motions to dismiss for lack of subject matter jurisdiction and for failure to state a claim, and also moved for Fed.R.Civ.P. 11 sanctions. At about the same time, the Andersens filed a "Motion for Sanctions," a "Motion for a Certificate of Necessity," and a "Notice of Disqualifying Circumstances" that requested the Court to disqualify all of the federal judges in the Seventh Circuit and to transfer the case to an "out-of-the-Seventh-Circuit-judge." The Andersens argued *inter alia* that they would not "receive a fair hearing ... from any judge in the Seventh Circuit due to the involvement of their fellow judge ... as a named Defendant and major figure in the instant case." Motion for a Certificate of Necessity ¶ 7.

On November 20, 1987, after reviewing plaintiffs' complaint and all of the motions, this Court dismissed the complaint for failure to comply with Fed.R.Civ.P. 8 and 9(b). The Court ruled that Rules 8 and 9(b) require plaintiffs to particularize their allegations of "fraud on the court" in as short, plain, and direct a way as is reasonable. To comply with these rules, the Court instructed plaintiffs to set out each judicial proceeding complained of, allege specific facts that make those proceedings "fraudulent" or otherwise improper, and name the particular judges and other individuals involved and the extent of their involvement in each claim of "fraudulent" or otherwise improper conduct. The Court, therefore, dismissed plaintiffs' Complaint and gave them thirty days to move for leave to file an Amended Complaint that complied with the Court's instructions. The Court did not rule on plaintiffs' motion to disqualify and transfer the case to a judge outside the Seventh Circuit.

■ Thirty-one days later, plaintiffs filed their motion for leave to file their Amended Complaint and attached their Amended

Complaint to the motion. In the motion, plaintiffs argued that the motion's untimeliness should be excused because plaintiffs did not promptly receive the Court's Order dated November 20, 1987. Motion for Leave to Amend Instanter ¶ 3. Based on plaintiffs' argument, the Court will excuse the untimeliness of their motion and consider their Amended Complaint.

After reviewing the two-count Amended Complaint, the Court finds that plaintiffs have sufficiently complied with the pleading requirements of Fed.R.Civ.P. 8 and 9(b). Plaintiffs have set out each judicial proceeding, made specific allegations concerning the claimed "fraudulent" or otherwise improper proceedings, and sufficiently named the individuals claimed to be involved and the specific extent of their alleged involvement. In Count I, plaintiffs seek to overturn the adverse judgments in their RICO and Civil Rights cases. Amended Complaint ¶¶ 592–93. In Count II, plaintiffs seek money damages totalling $107,110,400 and attorney's fees against defendants for "intentionally wielding [the state and federal court] fraudulently begotten judgments against Plaintiffs." Amended Complaint ¶ 594.

Plaintiffs have added a number of individually-named defendants to their "fraud on the court" allegations, and these defendants now include me, my secretary, and my minute clerk. Plaintiffs have also renewed their motion to disqualify all federal judges in the Seventh Circuit and to transfer their case to a judge outside the Seventh Circuit. "Renewed Motion for Sanctions" and "Notice of Disqualifying Circumstances & Demand for Administrative Action Upon Plaintiffs' Pending Motion For a Certificate of Necessity."

## II. *Discussion*

■ Ordinarily, the Court's first task in ruling on plaintiffs' "fraud on the court" case would be to determine whether it has subject-matter jurisdiction—if it does not have subject-matter jurisdiction, it does not have the power to rule on the case. Here, however, the Court's first task is to determine whether it should disqualify itself from considering whether it has subject-matter jurisdiction.

### 1. Disqualification

In their motions styled "Motion for Sanctions," "Motion for a Certificate of Necessity," "Notice of Disqualifying Circumstances," "Renewed Motion for Sanctions" and "Notice of Disqualifying Circumstances & Demand for Administrative Action Upon Plaintiffs' Pending Motion For a Certificate of Necessity," plaintiffs argue that this Court must disqualify itself and all other federal judges in the Seventh Circuit and transfer their case to "an out-of-the-Seventh-Circuit judge." Plaintiffs correctly point out that disqualification in this case is governed by 28 U.S.C. ¶ 455. Section 455 provides in relevant part:

> *Disqualification of justice, judge, or magistrate*
>
> (a) Any justice, judge, or magistrate of the United States *shall* disqualify himself in any proceeding in which his *impartiality might reasonably be questioned.*
>
> (b) He *shall* also disqualify himself in the following circumstances:
>
> .    .    .    .    .
>
> (4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a *financial interest in the subject matter in controversy or in a party to the proceeding*, or any other interest that could be substantially affected by the outcome of the proceeding;
>
> (5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:
>
> (i) *Is a party to the proceeding....*

*Id.* (emphasis added).

Plaintiffs present three bases under Section 455 that might require this Court to disqualify itself from deciding this case. First, plaintiffs have added me as a defendant in their Second Amended Complaint, and therefore have sought to make me a party to the proceeding. Second, plaintiffs allege in their Amended Complaint that I have certain "financial interests" in the

subject matter in controversy or in a party to the proceeding. Amended Complaint ¶¶ 129, 140, 143. Third, for both the first and second reasons, plaintiffs claim that this Court's impartiality might reasonably be questioned.

■ The first basis might seem sufficient to require disqualification. The language of Section 455(b)(5)(i) requires disqualification where the judge is a party to the proceeding, and it implies automatic disqualification. This Section, however, has been construed by courts as not requiring automatic disqualification. *See, e.g., In re Martin–Trigona,* 573 F.Supp. 1237, 1242–43 (D.Conn.1983), *appeal dismissed,* 770 F.2d 157 (2d Cir.1985) ("[I]t is clear that a judge is not disqualified ... merely because a litigant sues or threatens to sue him."); *United States v. Grismore,* 564 F.2d 929, 933 (10th Cir.1977), *cert. denied,* 435 U.S. 954, 98 S.Ct. 1586, 55 L.Ed.2d 806 (1978) ("A judge is not disqualified because a litigant sues or threatens to sue him."). One reason courts have refused to interpret the section literally is to prevent the plaintiffs from "judge-shopping"; if Section 455(b)(5)(i) required automatic disqualification, plaintiffs might name a judge as a defendant to get a new (and perhaps more favorably inclined) judge. *In re Martin–Trigona,* 573 F.Supp. at 1243; *see also New York Housing Development Corp.,* 796 F.2d 976, 981 (7th Cir.1986) ("automatic disqualification allows the party to manipulate the identity of the decisionmaker ...".). Thus, courts have refused to disqualify themselves under Section 455(b)(5)(i) unless there is a legitimate basis for suing the judge. *See, e.g., In re Martin-Trigona,* 573 F.Supp. at 1243. Another reason courts have refused to interpret the Section literally is that such an interpretation does not allow for a situation where all judges in a particular district have been sued. *See, e.g., Turner v. American Bar Association,* 407 F.Supp. 451, 481 (N.D. Tex.1975), *aff'd without opinion sub nom. Taylor v. Montgomery,* 539 F.2d 715 (7th Cir.1976). As stated in *Turner,*

> ... [T]here is a maxim of law to the effect that where all are disqualified, none are disqualified. *Evans v. Gore,*

253 U.S. 245, 40 S.Ct. 550, 64 L.Ed. 887 (1920). The theory supporting this maxim is that if disqualification operates so as to bar justice to the parties and no other tribunal is available, the disqualified judge or judges may by necessity proceed to judgment.

*Id.,* 407 F.Supp. at 481.

■ For either of these reasons, the Court finds that it is not required to disqualify itself under Section 455(b)(5)(i). It is apparent to the Court that plaintiffs do not have a legitimate basis for suing me, my secretary, and my minute clerk. None of us were sued in plaintiffs' initial complaint; we were added as defendants only after I dismissed plaintiffs' Complaint for failure to comply with Fed.R.Civ.P. 8 and 9(b). To disqualify myself simply because plaintiffs have sued me would be to allow plaintiffs to manipulate the identity of the decisionmaker and to engage in "judge-shopping." Further, plaintiffs have sued in their Amended Complaint four other federal district court judges in the Northern District of Illinois. Amended Complaint ¶¶ 4–7. All of these judges were on the Executive Committee that reassigned plaintiffs' case to this Court. If this Court were to disqualify itself and require the Executive Committee to again reassign the case to another district judge, plaintiffs would sue the new district judge and so on and so on. Further difficulties would ensue if the Executive Committee were disqualified to act. The Court will not allow plaintiffs to impede the administration of justice by suing every district court judge in the Northern District of Illinois until their case is transferred out of the Seventh Circuit. As the Seventh Circuit has recognized, "[automatic] recusal benefits the judge who steps aside, and the litigant who sought this outcome, but it may injure the judge who must take over the case and the litigant aggrieved by the substitution." *New York Housing Development Corp.,* 796 F.2d at 981.

■ Plaintiffs' second basis for disqualification is equally unavailing. Section 455(b)(4) requires disqualification where the judge has "a financial interest in the

subject matter in controversy or in a party to the proceeding." In their Amended Complaint, plaintiffs allege that a defendant bank was involved in the "fraudulent" state court foreclosure and replevin actions and in the federal court "RICO" and "Civil Rights" actions, and that I have a financial interest in "correspondent banks" to the defendant bank. Not only is this not true, but, even taken as true, the relationship between the defendant bank and the "correspondent banks" is too attenuated to require disqualification. *See, e.g.,* Annotation, *Disqualification of Judge Under [Section 455(b)(4)] Providing for Disqualification Where Judge has Financial or Other Interest in Proceeding,* 55 ALR Fed. 650, 654 (1987) (collecting and discussing cases) ("[T]he interest involved must be sufficiently direct and significant to rise to the level of 'financial interest'.) A judge's financial interest in a "correspondent bank" to a defendant bank is simply too indirect and insignificant a financial interest to require disqualification under Section 455(b)(4). *New York City Housing Development Corp.,* 796 F.2d 976, 979–80 (7th Cir.1986) ("It could be said that no judge who owns a house should render a decision that potentially affects the value of real estate in general, that no judge who owns stock should decide a case under the securities or antitrust laws, and so on. Effects of this sort are both ubiquitous and too indirect to require disqualification.").

Plaintiffs' third basis for disqualification must also fail. Section 455(a) requires disqualification where the judge's impartiality might *reasonably* be questioned. "The inquiry is objective, from the point of view of a reasonable person with access to all of the facts." *New York City Development Corp.,* 796 F.2d at 980. The Court rules that a reasonable person with access to all of the facts in this case would not question this Court's impartiality.

> As stated by another district court judge, Recusal and reassignment is not a matter to be lightly undertaken by a district judge. While, in proper cases, we have a duty to recuse ourselves, in [others] we have concommitant obligations not to recuse ourselves; absent a valid reason for recusal, there remains what has sometimes been termed a duty to sit.

*Simonson v. General Motors Corp.,* 425 F.Supp. 574, 578 (E.D.Pa.1976); *see also Laird, Secretary of Welfare v. Tatum,* 409 U.S. 824, 837, 93 S.Ct. 7, 14, 34 L.Ed.2d 50 (1972) ("a federal judge has a duty to *sit* where *not disqualified* which is equally as strong as the duty to *not sit* where disqualified.") (emphasis in original). In this case, the Court finds that there is no valid reason for disqualification and that it has a duty to sit in this case. Accordingly, plaintiffs' motion for disqualification and for transfer of their case to an "out-of-the-Seventh-Circuit judge" is denied, and the Court will address the merits of plaintiff's Amended Complaint.

### 2. Subject–Matter Jurisdiction

Plaintiffs assert that this Court has subject-matter jurisdiction over their Amended Complaint pursuant to either the Court's inherent power to set aside a judgment for "fraud on the court" or Fed.R.Civ.P. 60(b). Rule 60(b) sets out both of these bases for subject-matter jurisdiction:

> On motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order, or proceeding for the following reasons: ... (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; ... or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time.... This rule does not limit the power of the court to entertain an independent action to relieve a party from a judgment, order, or proceeding, ... or to set aside a judgment for fraud upon the court.

As provided by Rule 60(b), plaintiffs had three options to overturn the adverse judgments in their RICO and Civil Rights cases. One option would be to bring a timely Rule 60(b) motion in the same court that rendered the adverse judgments. For a thorough discussion of the various bases for overturning a federal judgment by Rule 60(b) motion, see 11 C. Wright & A. Miller,

*Federal Practice and Procedure* §§ 2851–2873 (1973 & Supp.1987) (hereinafter Wright & Miller). Another option would be to bring an independent action in the same or different court. For a thorough discussion of the scope and limitation of these actions, see Wright & Miller, *supra*, § 2868. The final option would be to bring an independent action in the same or different court for fraud on the court.

■ Plaintiffs have brought an independent action to overturn their adverse federal judgments for fraud on the court. A fraud that constitutes a fraud on the court is a limited kind of fraud. The Seventh Circuit has defined it as a fraud that "defile[s] the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Kenner v. Commissioner of Internal Revenue*, 387 F.2d 689, 691 (7th Cir.), *cert. denied* 393 U.S. 841, 89 S.Ct. 121, 21 L.Ed.2d 112 (1968); Wright & Miller, *supra*, § 2870 at 254–55 (There must be a "direct assault on the integrity of the judicial process." There must be "egregious conduct involving a corruption of the judicial process itself.").

■ Federal courts have inherent subject-matter jurisdiction to review federal judgments obtained by fraud on the court. The theory is that federal judgment "produced by fraud on the court is not ... a decision at all and never becomes final." *Kenner*, 387 F.2d at 691. If a convincing case of fraud on the court is made, the judgments are vacated and the cost of the proceedings, including attorney's fees, may be assessed against the party. *See, e.g., Universal Oil Products Co. v. Root Refining Co.*, 328 U.S. 575, 580, 66 S.Ct. 1176, 1179, 90 L.Ed. 1447 (1946), *on remand Root Refining Co. v. Universal Oil Products Co.*, 169 F.2d 514 (3rd Cir.1948), *cert. denied sub nom, Universal Oil Products Co. v. William Whitman Co.*, 335 U.S. 912, 69 S.Ct. 481, 93 L.Ed. 444 (1949). Thus, the Court concludes that it has subject-matter jurisdiction to rule on plaintiffs' case.

### 3. Allegations of Fraud on the Court

The gist of plaintiffs' allegations of fraud on the court is that the federal judges who ruled on their RICO and Civil Rights cases were acting under a "malign influence" against them. As specific evidence of this "malign influence," plaintiffs' claim that these federal judges all had financial interests that required their disqualification. Further, plaintiffs claim that the federal judges' failure to rule in their favor (and remedy the obvious and varied injustices committed against plaintiffs over the long course of events that resulted in the loss of their farm and farm equipment) creates a valid inference that the judges were acting, together with all the other defendants, under a "malign influence."

■ As to the claim of improper financial interest, plaintiffs allege that the federal judges who dismissed and affirmed the dismissal of their RICO and Civil Rights cases had interests in certain banks that were "correspondent banks" to a defendant bank. Amended Complaint ¶¶ 118–120, 122. As already discussed, however, these "financial interests" are too indirect and insubstantial to require disqualification. *See* Annotation, *supra*, 55 ALR Fed. at 654 (collecting and discussing cases). Because these allegations of improper financial interests are insufficient to require disqualification, they are insufficient to support plaintiffs' claim of fraud on the court. The federal judges ruling on their RICO and Civil Rights cases did not have improper financial interests.

■ As to the claim of failing to rule in plaintiffs' favor when justice required a favorable ruling, plaintiffs re-allege the basis of their RICO and Civil Rights cases. They allege that certain defendants exacted usurious rates of interest against them (Amended Complaint ¶ 303), failed to credit plaintiffs for their mortgage payments (Amended Complaint ¶ 305), presented false evidence during the state court foreclosure and replevin actions (Amended Complaint ¶ 312), presented perjured testimony in the state court foreclosure and replevin actions (Amended Complaint ¶ 326), and kidnapped the plaintiffs (Amended Complaint ¶ 327).

These allegations are serious, and, if properly presented to the state court, might have resulted in overturning the state court foreclosure or replevin judgments, or in some other kind of equitable relief. *See* Ill.Rev.Stat. ch. 110, para. 2–1401 (1985) (Relief from judgments).

■■■■ For several reasons, however, these allegations do not amount to a fraud on the court that would require overturning the federal judgments. First, a federal court's authority to overturn a federal judgment for fraud on the court does not allow parties to relitigate matters that have already been litigated in both federal and state courts. Wright & Miller, *supra*, § 2854. Whether plaintiffs' allegations of injustice amount to a RICO claim or a Civil Rights claim has already been litigated. Further, although plaintiffs seek to overturn their federal judgments, their federal judgments are essentially based on the alleged injustice of their state court foreclosure and replevin proceedings and those state court judgments. Thus, overturning the federal judgments would also require this Court to review the state court judgments. A federal court, however, has no authority to review state court judgments. *See, e.g., District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482, 103 S.Ct. 1303, 1315, 75 L.Ed.2d 206 (1983) ("... a United States District Court has no authority to review final judgments of a state court in judicial proceedings."); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *E–C Tape Service v. Barron,* 71 F.R.D. 585 (E.D.Wis.1976) (federal court has no authority to review an "unhappy state court litigant's" state case under Section 1983).

■■■■ Finally, plaintiffs' allegations in their Amended Complaint amount to only a biased belief that, because they lost their defenses to the state court foreclosure and replevin actions, all who were involved and have subsequently been involved in their prolix litigation have acted under a "malign influence" and have engaged in a fraud on the court. Plaintiffs attempt to draw an inference of "malign influence" amounting to fraud on the court by pointing out the claimed injustice of their adverse federal judgments. An adverse decision on these claims, however, simply does not support an inference that the federal judges were acting under a "malign influence" and that there has been a fraud on the court. The Court has given plaintiffs the opportunity to file an Amended Complaint to determine whether they could state a claim of fraud on the court. For the reasons discussed, the Court rules that plaintiffs have failed to state a claim of fraud on the court. The Court therefore denies plaintiffs' request to overturn their federal judgments.

### 4. Money Damages

■■■■ In addition to seeking to overturn their federal judgments, plaintiffs have also sought $107,110,400 in money damages. Because the Court has found that plaintiffs have failed to state a claim of fraud on the court, plaintiffs' claim for money damages must be denied. Their claim for money damages, however, must also be denied for other reasons.

First, this Court does not have subject-matter jurisdiction to award money damages for fraud on the court. As discussed, the Court has jurisdiction only to overturn federal judgments and to award costs and attorney's fees incurred in the proceedings to overturn the judgments. *See, e.g., Universal Oil,* 328 U.S. at 580, 66 S.Ct. at 1179. The Court does not have the authority to award the damages that are claimed in plaintiffs' underlying suit. *Id.; see also* Wright & Miller, *supra,* § 2870.

■■■■ Second, plaintiffs seek money damages against federal and state court judges. These judges, however, are absolutely immune from liability in damages for their judicial acts. *Forrester v. White,* —— U.S. ——, —— – ——, 108 S.Ct. 538, 542–43, 98 L.Ed.2d 555 (1988) ("Judicial immunity apparently originated, in medieval times, as a device for discouraging collateral attacks and thereby helping to establish appellate procedures as the standard system for correcting judicial error."). In addition to discouraging collateral attacks on judgments, judicial immunity also allows the judge to act independently and without the

fear of suit from a disgruntled litigant. *Id.* Thus, absolute judicial immunity applies to all decisions made in a judicial capacity, even when a judge is accused of malice or corruption. *Id.* at ——–——, 108 S.Ct. at 542–45; *see also Turner,* 407 F.Supp. at 451.

For all of these reasons, the Court rules that plaintiffs have failed to state a claim for money damages. The Court therefore denies plaintiffs' request for money damages.

### III. *Conclusion*

■ For the reasons set forth, the Court rules that plaintiffs' Amended Complaint fails to state a claim of fraud on the court as to all of the defendants in this case, and the Court dismisses plaintiffs' Amended Complaint with prejudice. To prevent further improper litigation and to prevent unnecessary expense on the part of both private and governmental parties, the Court enjoins plaintiffs from filing with the Clerk of the United States District Court for the Northern District of Illinois any further complaints, motions, or documents of any kind concerning the subject matter of this action without first having obtained permission of the Executive Committee of the United States District Court for the Northern District of Illinois. Although this Court sympathizes with the Andersens for the loss of their farm, the Court cannot permit disruption of this Court, waste of judicial resources, and further unnecessary expense on the part of the many persons who would otherwise be named defendants in future lawsuits relating to the same past occurrence.