*1150 Members of the House of Representatives
Alabama State House
Montgomery, Alabama
Dear Representatives:
We have received House Resolution No. 314, by which you have requested our advisory opinion on the constitutional ramifications of legislators’ voting on Senate Bill No. 574, a bill now pending before the legislature.
House Resolution No. 314 reads as follows:
“BE IT RESOLVED BY THE HOUSE OF REPRESENTATIVES OF THE LEGISLATURE OF ALABAMA, That we respectfully request the Honorable Chief Justice and Associate Justices of the Supreme Court or a majority of them, to give this body their written- opinions on the following important constitutional questions which have arisen concerning the pending bill, Senate Bill 574, a copy of which is attached to this resolution and made a part hereof by reference.
“By way of background, Senate Bill 574 authorizes the State Industrial Development Authority to exercise all powers under Article 2A of Chapter 10 of Title 41 of the Code of Alabama 1975, with respect to certain projects and certain entities that were designated as approved companies prior to January 16, 1995, notwithstanding specified laws to the contrary. Generally, the bill permits the State Industrial Development Authority to offer certain industrial development inducements, including tax credits and job development fees, to eligible or ‘approved’ companies. There is at least one and may be only one company meeting the specified criteria enumerated in Senate Bill 574.
“Section 82 of the Constitution of Alabama of 1901, provides: ‘A member of the legislature who has a personal or private interest in any measure or bill proposed or pending before the legislature, shall disclose the fact to the house of which he is a member, and shall not vote thereon.’ The court has previously opined in Opinion of the Justices No. 317, 474 So.2d 700 (Ala. 1985), that an interest in a bill is not personal or private for purposes of Section 82 if the interest of the legislator is no different than that of any other member of a sufficiently large class to which the legislator belongs.
“In view of Section 82 of the Constitution and its ■ application in Opinion of the Justices No. 317, important constitutional questions have arisen concerning legislative action on Senate Bill 574. Accordingly, pursuant to Section 12-2-10 of the Code of Alabama 1975, and in deference to this legislative body, so that we may properly and constitutionally dispatch the duties of our office, written opinions are respectively requested concerning the following important constitutional questions:
“1. Does the language ‘vote thereon’ in Section 82 apply only to a final vote on the bill, or other ancillary legislative activity concerning the bill, including, but not limited to, a vote to report the bill out of committee, a vote in committee to place the bill on a special order calendar, a vote on the floor to adopt a special order calendar containing the bill, a vote on a Budget Isolation Resolution, a vote concerning proposed amendments to the bill, and procedural votes regarding consideration of the bill?
“2. Does Section 82 prohibit a legislator from voting, as determined in question 1, on Senate Bill 574, if the legislator owns stock in the company eligible to receive industrial development inducements under the bill?
“3. If the answer to question 2 is yes, is the prohibition dependent upon the ownership of any stock in the company or a particular’ amount of stock?
*1151 “4. If the answer to question 2 is yes, is the prohibition dependent upon the number of persons (i.e., the size of the class) who own stock in the company? If so, what size class is necessary to assure the interest of a legislative member of the class is not personal or private for purposes of Section 82?
“5. Does Section 82 prohibit a legislator from voting, as determined in question 1, on Senate Bill 574, if both of the following occur:
“a. The legislator participates in a mutual fund or similar type investment venture in which the legislator has no control over the investments made;
“b. The fund or venture holds investments in the company eligible to receive industrial development inducements under the bill?
“6. If the answer to question 5 is yes, is the prohibition dependent upon the size or amount of the investment?
“7. If the answer to question 5 is yes, is the prohibition dependent upon the number of persons (i.e., the size of the class) who participate in the mutual fund or investment venture? If so, what size class is necessary to assure the interest of a legislative member of the class is not personal or private for purposes of Section 82?
“8. Does Section 82 prohibit a legislator from voting, as determined in question 1, on Senate Bill 574 if the legislator is a member of the State Retirement System and the retirement system holds investments in the company eligible to receive industrial development inducements under the bill?
“RESOLVED FURTHER, That the Clerk of the House of Representatives is directed to send sufficient true copies of the pending bill, Senate Bill 574, to the Clerk of the Supreme Court of Alabama, and to transmit this request to the Supreme Court forthwith upon adoption of this resolution.”
In responding to House Resolution No. 314 (“the Resolution”), we deem it unnecessary to set forth the text of Senate Bill No. 574, or to explain it further than does the Resolution as quoted. The Resolution requires us to construe two separate phrases in Ala. Const. 1901, § 82, as they relate to the conduct of legislators, namely, (1) “personal or private interest” and (2) “shall not vote thereon.”[1]
The Justices directly addressed the first of these phrases in Opinion of the Justices No. 317, 474 So.2d 700 (Ala.1985), where seven Justices said that the phrase “personal or private interest” means an interest “affecting] the legislator in a way different from the way it affects the other members of the class to which he belongs.” Id. at 704. The Justices concluded that § 82 did not require a legislator who was “employed in public education [and] paid from the Education Appropriations Act” to abstain from voting on a “general education pay raise bill affecting 85,000 or more school employees.” Id. at 701.
In doing so, the Justices quoted with approval the following statements from Note, Conflicts of Interest of State and Local Legislators, 55 Iowa L.Rev. 450, 451 (1969):
“ ‘Typically, no conflict would arise if the legislator voted upon legislation establishing tax rates, utility rates, or licensing fees. Although this type of legislation would affect the individual legislator personally, it would affect him in the same manner as the entire community and hence would not be an illegal conflict of interest
474 So.2d at 703. (Emphasis added.) The Justices regarded the phrases “conflict of interest” and “personal or private interest” as embodying the same principle, namely, the use of public office for private gain. In other words, the Justices construed § 82 as prohibiting a vote on any bill in which the legislator’s personal interest conflicts with the interests of those he was elected to represent. 474 So .2d at 703-04.
The Alabama Legislature had as its overriding purpose this same goal when it enacted the Alabama Code of Ethics for Public *1152 Officials (the “Ethics Act”), Ala.Code 1975, §§ 36-25-1 to -30, as amended by Act No. 95-194, 1995 Ala. Acts 269 — an Act based on the following “findings and declarations”:
“(a) The Legislature hereby finds and declares:
“(1) It is essential to the proper operation of democratic government that public officials be independent and impartial.
“(3) No public office should be used for private gain other than the remuneration provided by law.
“(4) It is important that there be public confidence in the integrity of government.
“(5) The attainment of one or more of the ends set forth in this subsection is impaired whenever there exists a conflict of interest between the private interests of a public official or a public employee and the duties of the public official or public employee.
“(6) The public interest requires that the law protect against such conflicts of interest and establish appropriate ethical standards with respect to the conduct of public officials and public employees in situations where conflicts exist.”
Section 36-25-2(a) (1997 cum. supp.) (emphasis added). In fact, when the legislature amended the Ethics Act in 1995, it codified, or “adopted,” J. Christie, Jr., A. Hornsby & A. Vandevelde, Alabama’s Amended Ethics Law, 57 Ala. Law. 34, 36 (1996), the definition of conflict-of-interest/personal-or-private-interest set out by the Justices of this Court in Opinion of the Justices No. 317, supra. Specifically, § 36-25-1(8), defines “conflict of interest” for purposes of the Ethics Act:
“A conflict on the part of a public official or public employee between his or her private interests and the official responsibilities inherent in an office of public trust. A conflict of interest involves any action, inaction, or decision by a public official or public employee in the discharge of his or her official duties which would materially affect his or her financial interest or those of his or her family members or any business with which the person is associated in a manner different from the manner it affects the other members of the class to which he or she belongs.
Indeed, it may be said with confidence that the Ethics Act was designed to implement the general purposes and goals of § 82, Ala. Const, of 1901. Thus, although the purposes of § 82 and the purposes of the Ethics Act may not align perfectly, they overlap sufficiently to allow us to rely upon the Ethics Act for guidance in addressing the questions posed by this Resolution.

I. Question One

The language in question one evidently assumes that this Court is thoroughly familiar with the intricate procedural details of the legislative process, such as the adoption of a “special order calendar” and the essence of a “budget isolation resolution.” That assumption is unwarranted. Thus, we will not attempt to identify precisely which specific acts violate § 82. We judicially know, however, that the legislative process is a tortuous one, involving many laborious— but crucial — procedural steps. The success of a bill depends in large part upon the resourcefulness and political influence of its sponsors and proponents.
A legislator may not, consistent with § 82, take an active part in steering a bill through this intricate process, only stopping short of voting on the bill in its final form. This conclusion is compelled by numerous provisions of the Ethics Act, including § 36-25-5, which provides in pertinent part:
“(a) No public official or public employee shall use or cause to be used his or her official position or office to obtain personal gain for himself or herself, or family member of the public employee or family member of the public official, or any business with which the person is associated unless the use and gain are otherwise specifically authorized by law....
“(b) Unless prohibited by the Constitution of Alabama of 1901, nothing herein shall be construed to prohibit a public official from introducing bills, ordinances, resolutions, or other legislative matters, serving on committees, or making statements or taking action in the exercise of his or *1153 her duties as a public official. A member of a legislative body may not vote for any legislation in which he or she knows or should have known that he or she has a conflict of interest.
“(c) No public official or public employee shall use or cause to be used equipment, facilities, time, materials, human labor, or other public property under his or her discretion or control for the private benefit or business benefit of the public official, public employee, any other person, or principal campaign committee as defined in Section 17-22A-2, which would materially affect his or her financial interest, except as otherwise provided by law or as provided pursuant to a lawful employment agreement regulated by agency policy.”
(1997 cum. supp.) (Emphasis added.) Moreover, § 36-25-1(8) defines a “conflict of interest” as “involving] any action, inaction, or decision by a public official ... in the discharge of his or her official duties which would materially affect his or her financial interest ... in a manner different from the manner it affects the other members of the class.” (Emphasis added.)
These provisions prohibit more than a vote on the final product. Section 36-25-5(a) prohibits the use of “official position or office to obtain personal gain,” and § 36-25-5(c) prohibits the use of various “facilities,” including “time, materials, human labor, or other public property ... for the private benefit or business benefit of the public official.” (Emphasis added.) Even more significantly, § 36-25-1(8) defines “conflict of interest” to include both “action” and “inaction.” (Emphasis added.) Although we decline to establish a “bright line” test, that is, to compartmentalize the specific activities referenced in question one, we construe the conflict-of-interest principle broadly enough to encompass numerous aspects of the legislative process other than just a final vote. Thus, the language in § 82 — “vote thereon” — applies not “only to a final vote on the bill,” but, also, to “other ancillary legislative activity” material to the bill’s passage.

II. Questions Two, Three, and Four

For the answers to questions two through four, we refer again to the Ethics Act. Before doing so, however, we reiterate that it is not every financial interest that prohibits action by a legislator. Opinion of the Justices No. 317, 474 So.2d at 704. “ ‘The wheels of government would stop if legislators could not vote on matters in which they necessarily have .a remote personal interest by reason of being a member of the public.’ ” Id. at 702-03 (emphasis added). Consistent with this caveat, the Ethics Act provides:
“A conflict of interest shall exist when a member of a legislative body ... has a substantial financial interest by reason of ownership of, control of, or the exercise of power over any interest greater than five percent of the value of any corporation, company, association, or firm, partnership, proprietorship, or any other business entity of any kind or character which is uniquely affected by proposed or pending legislation; or who is an officer or director for any such corporation, company, association, or firm, partnership, proprietorship, or any other business entity of any kind or character which is uniquely affected by proposed or pending legislation.”
Section 36 — 25—5(f) (1997 cum. supp.) (emphasis added). The prohibitions of § 82 apply, therefore, to the actions of legislators who have a “substantial financial interest,” namely, “ownership” or “control” of an “interest greater than five percent of the value of any . business entity ... which is uniquely affected by proposed or pending legislation.” Section 36-25-5© (emphasis added).[2]

III. Questions Five, Six, and Seven

Questions five through seven specifically inquire as to the application of § 82 to a legislator who “participates in a mutual fund.” A mutual fund investment has been described as follows:
“A [mutual fund company is a company] that makes investments on behalf of individuals and institutions with similar financial goals. Pooling is the key to mutual fund investing. By pooling (which gener *1154 ates economies of scale) the financial resources of thousands of shareholders— each with a different amount to invest— investors gain access to the expertise of the country’s top money managers, wide diversification of ownership in the securities markets, and a variety of services otherwise available only to institutions and wealthy families and individuals.”
2 Ind. Int’l & Comp. L.Rev. 385, 387 (Spring 1992).
Mutual funds differ in kind from many other investment opportunities. Because of these differences, they have been singled out for special consideration in the context of ethics. Although mutual funds are not expressly addressed in the Ethics Act, they are addressed in the Alabama Canons of Judicial Ethics.
Canon 3C.(l)(c), requires a judge to “disqualify himself in a proceeding in which ... [h]e knows that he ... has a financial interest in ... a party to the proceeding.” “Financial interest” is defined as “ownership of a legal or equitable interest, however small, or a relationship as director, advisor, or other active participant in the affairs of a party.” Canon 3C.(3)(c). But Canon 3C.(3)(c)(i) excepts mutual funds from this definition, stating that “[ojwnership in a mutual or common investment fund that holds securities is not a ‘financial interest ’ in such securities unless the judge participates in the management of the fund.” (Emphasis added.)
Some of the reasons for the mutual-fund exception were set out in New York City Housing Development Corp. v. Hart, 796 F.2d 976 (7th Cir.1986) (per curiam) (discussing 28 U.S.C. (“Judiciary and Judicial Procedure”) § 455(d)(4)(i), the federal counterpart to Alabama Canon 3C.(3)(c)(i)):
“A judge may hold a mutual fund that contains AT & T stock. Yet the judge is expressly authorized by § 455(d)(4)© to sit in a case involving AT & T, in part because the fund may sell the stock before the judge decides the case, in part because a change in the value of AT & T stock will have a small effect on the fund as a whole, and in part because a decision that helps or hurts AT & T may have the opposite effect on MCI, GTE, or other securities in the fund, washing out the effect on the judge’s portfolio. When Congress amended § 455 in 1974, it designed § 455(d)(4)© as a safe harbor, a way for judges to hold securities without needing to make fine calculations of the effect of a given suit on them wealth.”
796 F.2d at 980 (emphasis added). Moreover, because ownership in a mutual fund— by definition — does not constitute a “financial interest,” the quantity of this type of investment held by the judge is immaterial. Id.
' This reasoning applies with equal force to an analysis of § 82, Ala. Const, of 1901, as it applies to mutual funds. Indeed, it would be anomalous to hold that § 82 imposes a higher standard in this respect on legislators than the Canons of Judicial Ethics impose on judges. It would seem especially anomalous in view of the fact that Canon 3C.(3)(c) disqualifies a judge who owns even a de minim-is financial interest in a party, while § 36-25 — 5(f) prohibits legislative action only if the legislator owns more than 5%. In other words, if the standards of the Canons are higher than those of the Ethics Act, and if the Canons expressly exempt mutual fund investment, then, a fortiori, mutual fund investment should be excluded from the prohibitions of the Ethics Act, and, by extension, from § 82. Thus, § 82 does not “prohibit a legislator from voting ... on Senate Bill 574, if ... [t]he legislator participates in a mutual fund or similar type investment venture in which the legislator has no control over the investments made.”

IV. Question Eight

The State Retirement System is so closely analogous to the mutual fund investment venture discussed in the preceding section that the rationale resolving questions five through seven also resolves question eight. Thus, § 82 does not “prohibit a legislator from voting ... on Senate Bill 574 if the legislator is a member of the State Retirement System and the retirement system holds investments in the company eligible to receive industrial development inducements under the bill.”
*1155 Respectfully submitted,
/s/ Perry O. Hooper, Sr.
Perry 0. Hooper, Sr.
Chief Justice
/s/ Reneau P. Almon
Reneau P. Almon
/s/ Janie L. Shores
Janie L. Shores
/s/ J. Gorman Houston, Jr.
J. Gorman Houston, Jr.
/s/ Ralph D. Cook
Ralph D. Cook
/s/ Harold See
Harold See
Associate Justices
Dear Representatives:
I agree with the main opinion of the Justices and I also agree with Justice See’s opinion.
/s/ J. Gorman Houston, Jr.
J. Gorman Houston, Jr.
Associate Justice
Dear Representatives:
Although I agree with the main opinion of the Justices, I write specially to clarify my understanding of the scope of the answers given to questions two, three, and four. It is my understanding that the main opinion does not state that Ala.Code 1975, § 36 — 25—5(f), which focuses solely on the percentage of an affected business owned by a legislator, establishes an exhaustive definition of “personal or private interest” for purposes of § 82 of the Constitution of Alabama of 1901.
The Legislature may, through statute, inform this Court’s judgment as to the meaning of a constitutional provision; however, it has long been held that courts, ultimately, must determine the meaning of constitutional provisions. See, e.g., Monongahela Navigation Co. v. United States, 148 U.S. 312, 327, 13 S.Ct. 622, 37 L.Ed. 463 (1893) (stating that the federal legislature may not define “just compensation” more narrowly than provided in the Constitution as interpreted by the courts). When dealing with a constitutional provision, this Court generally defers to the Legislature’s reasonable construction of such a provision. See generally Hall v. Underwood, 258 Ala. 392, 399, 63 So.2d 683, 688 (1953) (stating that a statute should, if reasonably possible, be construed as consistent with the Constitution); Sadler v. Langham, 34 Ala. 311, 335 (1859) (“My rule has ever been to follow the [constitution] as it is written, regardless of consequences.... [I]f the legislature or the courts undertake to cure defects by forced and unnatural constructions, they inflict a wound upon the constitution which nothing can heal.”) (citation omitted). A measure of deference is particularly appropriate in matters affecting the internal operation of the Legislature, where the Legislature’s competence exceeds that of the Judiciary.
Section 82 of the Constitution provides:
“A member of the legislature who has a personal or private interest in any measure or bill proposed or pending before the legislature, shall disclose the fact to the house of which he is a member, and shall not vote thereon.”
The clear purpose of § 82 is to prevent a legislator from benefiting his personal or private interest by his vote. A legislator has a personal or private interest in a bill that particularly affects a business entity in which the legislator has a substantial interest. Substantial interest, of course, must be defined for constitutional purposes in terms of the personal benefit or cost that a bill may place on a legislator. A bill may, for example, affect a substantial personal or private interest of a legislator if it affects a business in which he is a substantial owner.
I agree with the main opinion that the Alabama Legislature’s enactment of § 36-25-5(0 provides a reasonable construction of one means by which a legislator may have a personal or private interest — ownership of a substantial portion of a business. Section 36-25-5(0 (1997 cum. supp.) provides in pertinent part:
“A conflict of interest shall exist when a member of a legislative body ... has a substantial financial interest by reason of ownership of, control of, or the exercise of power over any interest greater than five percent of the value of any corporation ... or any other business entity ... or who is *1156 an officer or director for any such corporation ... or any other business entity of any kind or character which is uniquely affected by proposed or pending legislation.”
(Emphasis added.)
Section 36-25-5(f) does not, however, address other means by which a legislator may have a substantial personal or private interest that is affected by a bill. Obviously, a legislator’s net income or net worth, for instance, would have at least as great a potential for creating a conflict of interest as the proportion of a business owned by the legislator. For example, a legislator, whose entire net worth is composed of the ownership of one percent of the outstanding stock of a Fortune 500 corporation, would have a substantial personal or private interest in a bill that particularly affected that corporation.
Accordingly, it is not my understanding that the main opinion confines the reach of § 82 of the Constitution to only one means of having a substantial personal or private interest. When the Legislature addresses the other means by which one of its members can have a personal or private interest, its reasonable construction will, of course, warrant appropriate deference.
/s/ Harold See
Harold See
Associate Justice
Dear Representatives:
I agree with the conclusion of the main opinion. The ancient maxim de minimis non curat lex holds that the law does not care for, or take notice of, very small or trifling matters. This long-standing rule, in existence when the Constitution of 1901 was ratified, allows us to apply § 82 in the manner discussed in the opinion of the Justices without being vulnerable to charges of disregarding the text of the Constitution or relying upon statutes and canons, although helpful, to modify the Constitution.
/s/ Champ Lyons, Jr.
Champ Lyons, Jr.
Associate Justice

. Section 82 provides in toto: "A member of the legislature who has a personal or private interest in any measure or bill proposed or pending before the legislature, shall disclose the fact to the house of which he is a member, and shall not vote thereon.”

. Of course, they also apply to a legislator who is an officer or director of such an entity.