**In re The AETNA CASUALTY AND SURETY COMPANY, Petitioner.**

No. 90–5184.

United States Court of Appeals, Sixth Circuit.

Reargued June 13, 1990.

Decided Nov. 26, 1990.

Claire McGuire (argued), Office of the Gen. Counsel, Federal Home Loan Bank Bd., Washington, D.C., for FDIC.

Janet L. Mayfield (argued), Knoxville, Tenn., for Thomas G. Hull.

William B. Luther, Steven S. Usary, Luther, Anderson, Cleary, Ruth & Speed, Chattanooga, Tenn., Larry L. Simms (argued), Julia A. Dahlberg, Paul Blankenstein, Gibson, Dunn & Crutcher, Washing-

ton, D.C., Geoffrey C. Hazard, Jr., New Haven, Conn., for Aetna Cas. & Sur. Co.

Before MERRITT, Chief Judge,
KEITH, KENNEDY, MARTIN, JONES,
KRUPANSKY, WELLFORD, MILBURN,
GUY, RYAN, BOGGS and NORRIS,
Circuit Judges.

WELLFORD, Circuit Judge.

Petitioner Aetna Casualty & Surety Co. (Aetna) seeks a writ of mandamus ordering Chief Judge Thomas Hull of the Eastern District of Tennessee to recuse himself from a series of cases, asserting that the recusal is required by 28 U.S.C. § 455. We must first determine whether the extraordinary writ of mandamus is available in a controversy of this kind.

Both of these cases involved bankers bond claims arising from the failures of the United American Bank and City & County Bank of Roane County arising out of defalcations by members of the Butcher family. After a hearing on January 10, 1990, Judge Hull entered a January 30, 1990 order denying Aetna's motion for recusal in these cases. Subsequently, however, Judge Hull recused himself from the C & C–Roane case.

## I. MANDAMUS JURISDICTION

We are now faced with the question of whether Judge Hull should be disqualified from further participation in the case of *FDIC v. Aetna*, CIV–1–85–797. This case involves a claim against the bankers blanket bond issued by Aetna, which claim is based on fraudulent losses at the former UAB–Chattanooga Bank. We also must decide whether any of the orders previously entered by Judge Hull in the UAB–Chattanooga and C & C–Roane bond claim lawsuits should be vacated. Aetna has also raised questions of propriety as to a December 14, 1989, order entered by another Eastern District of Tennessee Judge, The Honorable Leon Jordan, in the UAB–Knoxville bond case, to which that case was later apparently assigned by Judge Hull.

The problem facing us arises out of a series of separate actions filed against Aet-

na in December of 1985. These cases were assigned to Judge Hull who, pursuant to an uncontested motion, consolidated seven cases brought by the Federal Deposit Insurance Corporation (FDIC). In September of 1986 Judge Hull disqualified himself from the consolidated cases, as did other judges in that district. The cases were then assigned to another judge, but he was never in a position to handle any of the cases. Later, in 1987, then Chief Judge Lively of this court reassigned the consolidated cases to Judge Eugene E. Siler, Jr., a district judge from Kentucky. Aetna then moved to try the seven cases, as consolidated, in 1988. In April of 1989, Judge Hull—despite the reassignment of the cases by the Chief Judge of this circuit—denied Aetna's motion based on a finding that "several different banks are involved in this action and consolidation would not be appropriate."

Aetna promptly sought clarification of these orders denying consolidation of the seven cases for trial and reassignment of three cases by Judge Hull to himself. In each of the seven cases, FDIC sought to hold Aetna liable on its bond furnished with respect to the failures of different banks operated and/or controlled by the Butcher family. On April 24, 1989, Judge Hull entered the following order in the three cases reassigned reassigned to himself:

In an Order dated September 11, 1986, this Court indicated that the presiding judges in the Southern, Northeastern, and Northern Divisions of this district had disqualified themselves from trying a group of seven cases, including the three indicated above.

The reason that the undersigned disqualified himself was because the seven cases had been consolidated for trial, and in four of the cases, the firm of Morton, Lewis, King & Krieg, for whom his daughter works, were participating in the case. It now appears that the cases will not be tried together, and can be tried individually. This Court has no disqualification for trying these three cases because the law firm of Morton, Lewis,

King & Krieg is not participating in these three cases. These cases are some of the oldest cases on the docket in the Eastern District of Tennessee and need to be tried. Therefore, the above-styled cases will be pretried by United States Magistrate Robert P. Murrian, and set for a trial date, each to be set separately. *Magistrate Murrian will then pretry the other four related cases that are still assigned to the Honorable Eugene Siler.* They will also be set for an appropriate trial date.

J/A 14–15 (emphasis added).[1]

After one case was set for trial in Knoxville by Magistrate Murrian to commence in January of 1990, Aetna in May of 1989 moved to recuse Judge Hull in CIV-3-85-1242, a case involving Joseph H. Adams, Jr., Jacob F. Butcher, and Wayne Angel as third party defendants. The motion was based on 28 U.S.C. § 455, Canon 3 C of the Code of Judicial Conduct, and the Fifth Amendment due process clause. First, in the motion for recusal, Aetna asserted that Judge Hull was disqualified from participating with respect to its motion to consolidate for trial. Aetna relied on the following parts of § 455:

(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

(5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

(ii) *Is acting as a lawyer in the proceeding;*

(iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding. . . .

28 U.S.C. § 455 (emphasis added).

Aetna pointed out in its motion for recusal that "each of the seven cases involves virtually identical parties and legal issues and highly similar factual issues. In each case, the FDIC has brought suit, in its corporate capacity, against Aetna to recover the full bond penalty under a Bankers Blanket Bond, Standard Form No. 24, issued by Aetna to an insured Tennessee bank of which the FDIC had been the receiver."[2] Aetna claimed, moreover, that the law firm with which Judge Hull's daughter had been associated "actively represented" the FDIC at the time in November of 1988 that it had moved Judge Siler "to continue the consolidation of these seven cases for trial." Aetna complained that it received no prior notice that Judge Hull would reenter the picture and that his order gave no explanation as to why he was no longer disqualified.

Aetna asserted that Judge Hull's daughter had been associated with the firm in question for five years prior to 1988 and "had participated as counsel for the FDIC on at least one occasion in a consolidated case." It claims that Judge Hull's participation in the consolidated cases in any fashion was also a violation of § 455(a), because his "impartiality might reasonably be questioned," and also of § 455(b)(4) and (5)(ii), because his daughter had been a participant in the proceeding and because her interest in the firm (and in FDIC's being a prevailing party) "could be substantially affected" by his actions. Furthermore, Aetna claims that Judge Hull himself has an interest in the outcome of the consolidated proceedings because he had an ownership interest in a company which has similar fidelity bond coverage

---

1. Judge Hull actually thus entered an order in April of 1989 which impacted upon all seven consolidated cases, but specifically reassigned three to himself. We are concerned here only

with cases reassigned to Judge Hull or to District Judge Jordan. (J/A 134).

2. Aetna counterclaimed and asserted bad faith dealings under Tennessee law.

with Aetna and there are adversary claims pending with respect to interpretation of these policy provisions.[3]

FDIC took the position in response that Aetna's motion for recusal was dilatory in purpose, and noted as of July 18, 1989, "the recent transfer from employment" from the firm in controversy by the Judge's daughter.[4]

Finally, on October 30, 1989, Judge Hull, "for the convenience of the court" assigned CIV-3-85-1242 to Judge Leon Jordan for trial. At a hearing on the Aetna motion to recuse, the record reflects the following pertinent comments by Judge Hull (January 10, 1990) on recusal by reason of his daughter's position with a firm representing FDIC:

> It was then that it came—it did come to my attention as the Chief Judge of the District that the cases weren't being tried. I mean, these were the oldest cases we've got in the Eastern District of Tennessee, and there wasn't much happening on them, so I, I took a look at them in my position as Chief Judge to see what I could do with them. We then in the meantime got them assigned to Judge Siler. I believe even before that time at one time it looked like Ken Porter was going to become the Judge and he didn't, so I, I even had—I think I had them assigned to him for a while ...

> But in the meantime, Judge Siler really didn't have the time to come over here and try these. It was after looking them over I became convinced that they shouldn't be tried together anyway that they're separate, they're separate people, they're—the FDIC representing, the bank representing.

. . . . .

I went ahead and decided I, as Chief Judge of the District, I decided that we were going—I called Judge Siler about it and I said, "I can try these three cases here and I'll take those off of you, and *these other four you, you can stay on them because the Morton firm is still involved in them"; and at that time I believe my daughter was still working for them;* so anyway, that's what I did.

. . . . .

After that happened, my daughter, and it is June the 30th of '89, that's when she resigned and she and her husband moved to Nashville. After that time, I didn't see any conflict.

(Emphasis added.)

Judge Hull denied Aetna's motion for recusal in two cases, CIV-1-85-797 and CIV-3-85-1243, and Aetna then filed a petition for mandamus.

In a response to Aetna's petition for mandamus, Judge Hull's brief takes the position that *In re City of Detroit,* 828 F.2d 1160 (6th Cir.1987) precludes mandamus in this situation. He also takes the position in his brief that appeal after the case (or cases) involved has been decided is an adequate remedy rather than the extraordinary process of mandamus. His counsel at oral argument, however, indicated that he had no quarrel with our aligning this court with all the other circuits which have taken a contrary position. Finally, he joins FDIC in taking the position that the motion to disqualify is not timely but filed for purposes of delay.[5]

Initially a panel of this court denied the petition for mandamus and declined "to depart from our longstanding rule that matters of recusal may be addressed following final judgment", but this court then

---

**3.** In connection with the latter contention, Aetna maintained furthermore that Judge Hull had a "past business relationship" with Jacob Butcher because of financial interests in other banks that might give him personal knowledge about contested facts in the formerly consolidated cases.

**4.** Attached to the FDIC response was a letter from that firm dated July 7, 1989, stating that the daughter "had never been assigned to the FDIC cases." It appears that the daughter appeared at the deposition of Mackie A. Sneed, FDIC senior examiner, but was never counsel of record in any of the seven FDIC cases.

**5.** Judge Hull's memo filed as a response is in error in alleging that his daughter "left that firm" [the Morton firm] "in April of 1989," rather than June 30th.

decided to hear this matter *en banc*, and stayed trial of CIV–1–85–797.[6]

■ In a *per curiam* opinion in 1980, a panel of this court considered a mandamus petition by a party in a longstanding antitrust case involving its motion to disqualify the district judge. *City of Cleveland v. Krupansky*, 619 F.2d 572 (6th Cir.), *cert. denied*, 449 U.S. 834, 101 S.Ct. 106, 66 L.Ed.2d 40 (1980), held that the controversy "may not be reviewed by us in a mandamus proceeding. *Albert v. United States District Court*, [283 F.2d 61 (6th Cir.1960), *cert. denied*, 365 U.S. 828, 81 S.Ct. 713, 5 L.Ed.2d 706 (1961)]. It may be reviewed upon appeal after the antitrust case has been decided. *Oliver v. Kalamazoo Board of Education*, 508 F.2d 178 (6th Cir.1974), *cert. denied*, 421 U.S. 963 [95 S.Ct. 1950, 44 L.Ed.2d 449] (1975)." 619 F.2d at 575.

*City of Cleveland* involved an underlying discovery dispute, and the motion to disqualify the judge was filed with a petition for mandamus seeking to have the judge "cease his unlawful abuse of judicial power and to permit the City discovery...." *Id.* at 573. We deem an underlying dispute about discovery which involves essentially discretionary action on the part of the court to be different in character from a dispute about whether a trial judge should be disqualified because of a conflict or conflicts of interest. We might well distinguish *City of Cleveland* and hold it inapplicable on this basis alone. In addition, *City of Cleveland*'s holding that it would not entertain the petition for mandamus in connection with the motion for disqualification might be considered dictum because the court had first ruled:

1) the district court had broad discretion in discovery matters (surely an unexceptional holding);

2) that mandamus is not available as a "substitute for appeal" (citing *Albert*);

3) the case did not present an "extraordinary situation" justifying the use of mandamus;

4) there was no "abuse of discretion on the part of the Judge." *Id.* at 575.

In short, we dealt with all the underlying issues in *City of Cleveland* and first eliminated the underlying bases for disqualification on the merits. We are faced with a different situation in this case involving both § 455(a) and (b).[7] *City of Cleveland* would not seem to constitute a bar to our consideration of the petition for mandamus under these present circumstances.

The next and most recent case in our court to consider mandamus with respect to disqualification of a district judge was *In re City of Detroit*, 828 F.2d 1160 (6th Cir.1987).

> Because the refusal of a trial judge to disqualify himself is not *ordinarily* subject to review by way of mandamus, and because we are satisfied that the judge in this case did not abuse his discretion ... we shall deny the petition.

*City of Detroit*, 828 F.2d at 1161 (emphasis added).

In *Albert v. United States District Court*, 283 F.2d 61 (6th Cir.1960), *cert. denied*, 365 U.S. 828, 81 S.Ct. 713, 5 L.Ed.2d 706 (1961), a case relied upon in both *City of Cleveland* and *City of Detroit*, we had held that under the circumstances of that case where disqualification of the district judge was sought:

> Mandamus does not lie to compel a judge of an inferior court to reverse a decision made by him in the exercise of a legitimate jurisdiction. *Ex parte Flippin*, 1876, 94 U.S. 348, 24 L.Ed. 194, or compel him to decide according to the dictates of any judgment but his own, *United States v. Lawrence*, 1795, 3 Dall. 42, 1 L.Ed. 502, or to control the exercise of his discretion. *Gottlieb v. Rubenstein*, 6 Cir., 1958, 252 F.2d 779. This remedy is reserved for really extraordinary causes. It may not be used as a substitute for appeal.

*Albert*, 283 F.2d at 62. It may be seen that *Albert* itself is somewhat doubtful prece-

---

6. The order for *en banc* hearing was entered two days after Judge Hull's last order in CIV–1–85–797 in April of 1990.

7. The disqualification statute was not mentioned or analyzed in *City of Cleveland*.

dent for non-review of the mandamus petition in the instant case.

The *Gottlieb* decision cited in *Albert* indicated that we would not direct by mandamus a district court's consideration of whether or not to grant a new trial or to direct a remittitur.

> While this Court has authority in a mandamus proceeding to require a District Judge to make a ruling in a cause pending before him, we will not undertake by mandamus to direct him what ruling to make, particularly where the ruling is one which addresses itself to the discretion of the District Judge. *Ex Parte Park & Tilford*, 245 U.S. 82, 85, 38 S.Ct. 15[15], 62 L.Ed. 164 [1917]; *Jewell v. Davies*, 6 Cir. [1951], 192 F.2d 670, 673.

> The Court is of the opinion that the Writ of Mandamus is not to be used as a substitute for an appeal ...

*Gottlieb v. Rubenstein*, 252 F.2d 779 (6th Cir.1958). It should be noted that no motion to recuse or disqualify was involved in *Gottlieb*, which cited as its authority, *Jewell v. Davies*, 192 F.2d 670 (6th Cir.1951), cert. denied, 343 U.S. 904, 72 S.Ct. 635, 96 L.Ed. 1323 (1952). The only discussion about mandamus against a district judge in *Jewell* was as follows:

> "Mandamus, prohibition and injunction against judges are drastic and extraordinary remedies. *We do not doubt power in a proper case to issue such writs.* But they have the unfortunate consequence of making the judge a litigant, obliged to obtain personal counsel or to leave his defense to one of the litigants before him. These remedies should be resorted to only where appeal is a clearly inadequate remedy. We are unwilling to utilize them as a substitute for appeal. As extraordinary remedies, they are reserved for really extraordinary causes."

*Jewell v. Davies*, 192 F.2d 670, 674 (emphasis added), (quoting *Ex parte Fahey*, 332 U.S. 258, 67 S.Ct. 1558, 91 L.Ed. 2041 (1947)). Once again, close analysis of our prior cases does not lead to the conclusion that a petition for mandamus may not lie in a case of this type.

One may observe that *City of Detroit* does not categorically state that mandamus is never available in reviewing refusal to disqualify. We stated instead that "[t]his court has not been sympathetic to the notion that review of disqualification questions may be obtained through mandamus ..." 828 F.2d at 1165. Again, this court's analysis in *City of Detroit* did not foreclose mandamus; it merely indicated that the court was not "sympathetic" to such petitions, that they "ordinarily" would not be granted, and that Supreme Court authority on the question seemed inconsistent. *City of Detroit* also stated that this court had "refused to allow immediate review of denials of judicial disqualification motions" because of the "final judgment rule." *Id.* at 1167. In *City of Detroit* the panel felt constrained to follow *City of Cleveland*, but like *City of Cleveland* nonetheless went on to consider and to rule on the merits of the petition, finding no abuse of discretion on the part of the district court. We construe neither *City of Cleveland* nor *City of Detroit* to be precisely analogous to the question before us—should a petition for mandamus be considered by this court following a district judge's refusal to grant a disqualification motion based on appearance of partiality and conflict of interest?

Although we might well distinguish these cases for the reasons indicated, we choose instead to consider whether, if these cases in this circuit and the predecessor cases cited stand for a negative answer to the question posed, we should reconsider that authority as incorrect and inappropriate, especially under the circumstances that apply here.

Other circuit courts have universally answered the question whether mandamus should be considered under similar circumstances in a contrary fashion to *City of Cleveland* and *City of Detroit*. In what it deemed "a case of first impression under 28 U.S.C. § 455, as amended," the Seventh Circuit, after considering legislative history and the commentary to the code, undertook to consider fully and on the merits the issues presented on disqualification under remarkably similar circumstances to those

in the instant controversy in *SCA Services, Inc. v. Morgan,* 557 F.2d 110, 112 (1977).[8] It, too, involved "claims and counterclaims of millions of dollars;" a question whether the Judge's close relative could be involved in the case through his interest in a participating law firm; and whether the Judge's appearance of impartiality might reasonably be questioned. The court held in *Morgan* that the district judge was in error in not disqualifying himself and by mandamus ordered recusal. The court noted that § 455 disqualification was different from that involved under 28 U.S.C. § 144.[9] We agree with the result reached in that closely analogous case.

Another circuit followed the rationale of *SCA Services, Inc.,* stating "the issue of judicial disqualification presents an extraordinary situation suitable for the exercise of our mandamus jurisdiction." *In re United States,* 666 F.2d 690, 694 (1st Cir. 1981).

Still another court followed suit in a denial of disqualification situation (based in part on out-of-court statements and actions of the district judge and his clerk) holding, "[w]e do not deny our authority to review on mandamus the question of disqualification" in a case involving both 28 U.S.C. §§ 144 and 455. *In re Corrugated Container Antitrust Litigation,* 614 F.2d 958, 961, n. 4 (5th Cir.), *cert. denied,* 449 U.S. 888, 101 S.Ct. 244, 66 L.Ed.2d 114 (1980). That case noted, moreover, that "in exceptional circumstances" in a case of this type "the writ will lie." *Id.* The Eleventh Circuit would presumably also follow that decision. *See Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc). At about the same time *City of Cleveland* was decided, the Second Circuit took a different view from that of our court and considered

in great detail a petition for mandamus instituted by a party that had unsuccessfully filed a motion to disqualify the district judge under 28 U.S.C. § 455. *See In re Int'l Business Machines Corp.,* 618 F.2d 923 (2d Cir.1980).

Following this same parade of authority, the Ninth Circuit made the following observation:

It is not necessary to create a general rule permitting immediate appeal of all recusal decisions in order to resolve the exceptional situations. *See Firestone Tire & Rubber Co. v. Risjord,* [449 U.S. 368, 378 n. 13, 101 S.Ct. 669, 676 n. 13, 66 L.Ed.2d 571 (1981) ]. Ultimately, if dissatisfied with the district judge's decision and confident that the litigation will be greatly disrupted, a party may seek a writ of mandamus from the court of appeals. It is for just such an exceptional circumstance that the writ was designed.

*In re Cement Antitrust Litigation,* 673 F.2d 1020, 1025 (9th Cir.1982). To the same effect, *see Liddell v. Board of Education,* 677 F.2d 626, 643 (8th Cir.), *cert. denied,* 459 U.S. 877, 103 S.Ct. 172, 74 L.Ed.2d 142 (1982), and *In re Beard,* 811 F.2d 818, 827 (4th Cir.1987).

We find ourselves in agreement with a conclusion from a case from yet another circuit (which also joined the unanimous view on this question outside this circuit) that "mandamus is the proper remedy to vacate the orders of a judge who acted when he should have recused." *Moody v. Simmons,* 858 F.2d 137, 143 (3d Cir.1988), *cert. denied,* 489 U.S. 1078, 109 S.Ct. 1529, 103 L.Ed.2d 835 (1989). *Moody,* a bankruptcy case, also involved ramifications or alleged conflict of interest on the part of a district judge who, after indicating he

---

**8.** *SCA Services* may have been the first to decide this issue under § 455 as amended, but was closely followed by *Bell v. Chandler,* 569 F.2d 556 (10th Cir.1978):

There is no question but that a mandamus petition may be used to force the disqualification of a district court judge. *See United States v. Ritter,* 273 F.2d 30 (10th Cir.1959), *leave to file petition for cert. or mandamus denied,* 362 U.S. 950, 80 S.Ct. 863, 4 L.Ed.2d 869 (1960); *Occidental Petroleum Corp. v.*

*Chandler,* 303 F.2d 55 (10th Cir.1962), *cert. denied,* 372 U.S. 915, 83 S.Ct. 718, 9 L.Ed.2d 722 (1963); *United Family Life Insurance Co. v. Barrow,* 452 F.2d 997 (10th Cir.1971).
569 F.2d at 559.

**9.** Section 144 allows a party to file an affidavit "that the Judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party ..."

would recuse himself because of his daughter's employment with a creditor bank, nonetheless entered an order in a case before him. This action became the subject matter of a petition for mandamus which was issued by the appellate court, indicating that recusal was required.

To the extent, then, that our prior case authority may be deemed to hold that we will not entertain or consider a petition for mandamus following refusal of a district court to disqualify based on conflicts of interest and alleged appearance of impropriety under § 455, we now disavow such case precedent. Instead we hold, along with all other circuits that have ruled on the question, that we will review such a petition, and in particular, we will review on its merits the petition for mandamus under circumstances involving alleged conflict of interest and/or appearance of impropriety under § 455.

We adopt also this language from *Moody* as our rule of practice:

We ordinarily review recusal decisions for abuse of discretion. We first look to § 455(b), which provides that a judge is automatically recused upon the existence of certain familial and/or financial relationships, and then to the more general terms of § 455(a).

. . . . .

Under § 455(a) a recusal is required when a reasonable person would harbor doubts about the judge's impartiality. *United States v. Sciarra*, 851 F.2d 621, 634 (3d Cir.1988), *Edelstein v. Wilentz*, 812 F.2d 128, 131 (3d Cir.1987).

*Moody v. Simmons*, 858 F.2d at 142 (footnote omitted).

Having decided to join the clear consensus view that we can and should consider a petition for mandamus following a district court's denial of a motion to disqualify based on conflict of interest and appearance of partiality under 28 U.S.C. § 455, we now pass to a consideration of the merits of this case.

## II. RECUSAL—DISQUALIFICATION

Judge Hull stated in open court at a hearing on the question of his disqualification, as before indicated, that his daughter resigned from the law firm that had represented FDIC on June 30, 1989. He had recused himself previously on the basis of his daughter's association with the Morton firm involved as a counsel for FDIC, and we believe under the circumstances of this record that it was appropriate for him to have recused himself. He nevertheless reentered the case or cases on April 3, 1989 when Aetna moved to consolidate them for trial. The same circumstances that had persuaded Judge Hull to recuse himself previously, however, still prevailed on April 3, 1989.[10] A decision on the merits of any important issue in any of the seven cases, moreover, could or might constitute the law of the case in all of them, or involve collateral estoppel, or might be highly persuasive as a precedent. Thus, even if the Morton firm were not counsel of record for FDIC in all of the seven cases but only some of them, and was not of counsel in the three cases reassigned by Judge Hull to himself, we would find that the circumstances would indicate to a reasonable party, such as Aetna, that his partiality might be implicated, and/or that § 455 would apply.

Aetna, by virtue of Judge Hull's April 1989 order, was faced with separate trials in seven cases involving substantially similar issues and similar controlling questions of law as to the interpretation of the same blanket bond provisions in each case. Aetna was thus substantially involved and interested in Judge Hull's order, and had a legitimate basis to seek clarification and then to raise the disqualification issue. Judge Hull's order of April 24, 1989 (while his daughter was associated with the Morton firm and had apparently made an appearance in a deposition of a key witness) also clearly indicated that he intended to

**10.** The Morton firm still reflected Leslie Hull Welsch on its letterhead as an associate in a letter dated July 7, 1989 in the record addressed to adversary counsel. She was also listed as the second most senior associate out of more than fifteen associated with Morton in the 1989 Martindale–Hubbell Law Directory.

proceed promptly with a trial and disposition in the three cases he assigned to himself.

Again, during the same time span (prior to June 30, 1989), the magistrate entered a pretrial order in one of the reassigned cases (CIV–3–85–1242) and set a trial date for a first trial before Judge Hull. This was the first trial date for any of the seven previously consolidated cases.

We find no basis for the claim that Aetna was merely seeking to delay in its pursuit of disqualification. Without any explanation or notice, the judge who had disqualified himself for a specific reason—his daughter's association with a law firm interested in similar substantial issues of Aetna's liability on a common bond arising out of similar Butcher family activities in different banks taken over by FDIC—suddenly reentered the consolidated cases, although his daughter's association with the firm continued, and decided issues of significant import (severance and pretrial schedules).

As indicated in *SCA Services* and in *Moody*, there were circumstances present here which supported Judge Hull's initial decision to recuse himself in all the Aetna–FDIC cases. There was no justifiable basis in April of 1989 for the judge to become involved again in any of the consolidated cases; no change of circumstances had occurred. The only basis claimed at the time was that the cases were old and needed to be tried. It is commendable for the chief judge of a district court to be concerned about the state of the docket in his court, but the FDIC–Aetna controversies were properly out of his hands at all times until June 30, 1989, the earliest date when his daughter's association with the Morton firm ended. The entry of the orders by, and as directed by, Judge Hull during April 1989 were therefore improper. Aetna's motion for disqualification should have been granted.

Judge Hull's remarks at the January 10, 1990 hearing confirm the basis for our con-clusion, however reluctant we may be to invoke disqualification as to a district judge who has acted to speed disposition of long pending cases. We have discussed primarily the daughter's association as a basis for disqualification because it involves appearance of partiality and also conflict of interest principles under § 455(b)(4) and (b)(5)(ii). As to the assertion that Judge Hull was associated with another company which had bond claims pending on a similar Aetna blanket bond, Judge Hull made no denial. Instead, he emphasized in the January 10, 1990 hearing that "by February 1st I'll be out of it [Brandon & Hull]." J/A A–133. We believe that this circumstance adds weight to the conclusion that Judge Hull should have recused himself.[11] Judge Hull also stated on the record that he owned a one-half interest in Brandon & Hull, and "evidently Aetna ... is the carrier," and he did not deny that Aetna provided Brandon & Hull a similar indemnity policy to those involved in the cases at issue.

The last basis for disqualification—Judge Hull's financial interest in a bank acquired by the Butcher interests—was also discussed at the January 10, 1990 hearing, and the following colloquy occurred between the judge and Aetna's attorney:

I held a substantial interest in stock of Andrew Johnson Bank, which was formally [sic] the C & C Bank of Greene County and which belonged to Butcher and a group of his associates, okay, C.H. Butcher and his associates, all right; and the scenario goes there, as I understood it—and I'm not sure I did understand it, and that's another reason I wanted to have the hearing here—these are two cases that I have. One of them involves the bond that was issued to the former United American Bank of Hamilton County and the other one involves a bond issued by our company to the C & C Bank of Roane County; that's the two cases that I've got. The one from the

---

**11.** We reach this conclusion accepting Judge Hull's statement that he did not realize this conflict existed when he acted in April of 1989.

Knoxville case has already been assigned to Judge Jordan.

.     .     .     .     .

I was trying to figure out where there was a conflict with the note that the FDIC owned with a bank up on Washington County, that's what I'm trying to get to. I can't see how they conflict, *but they may.*

.     .     .     .     .

The bank that I have some stock in does have an interest in that proceeding; so the question is for me, how does that, that, the—further, further I believe that, that the, that the note that Jake and Sonja Butcher had was an unsecured note, and it's not one of the—at least in this case—it's not one of the alleged fraudulent transactions or embezzlement transactions that Jake Butcher participated, is alleged to have participated in. How does that conflict with these cases, I guess that's my question?

Mr. Simms: We believe that through your financial interest in the Andrew Johnson Bank—

The Court: All right.

.     .     .     .     .

I don't understand exactly what the conflict is.

Mr. Simms: We believe that the Andrew Johnson Bank's interest in that claim, the FDIC's claim against Mr. Butcher, is traceable to you. Mr. Butcher is a party in one or more of these cases, and, therefore, that financial interest is, is—you are disqualified because you have a financial interest in that claim by the FDIC as one of the parties.

J/A 134, 135, 137, 138–39 (emphasis added).

We make no judgment about whether an actual conflict of interest existed, but we believe this was but another factor mandating disqualification of Judge Hull when considered in conjunction with the other factors already discussed. All of these considerations in combination make it clear that we should mandate that Judge Hull should have recused himself in 1989 from making decisions in any of the consolidated FDIC–Aetna cases.

Petitioner Aetna argues that a number of orders entered by Judge Hull and an order entered by Judge Jordan must be vacated in light of our writ of mandamus directing Judge Hull to recuse himself. First, petitioner contends that Judge Hull's April 24, 1989 order directing the magistrate to set the UAB–Knoxville, C & C Roane, and UAB–Chattanooga cases for trial and Judge Hull's October 30, 1989 order reassigning the UAB–Knoxville case to Judge Jordan should be vacated. Respondents argue that these orders were ministerial in nature and were entered pursuant to Judge Hull's power to control the court's docket and prepare the cases for trial. *See* 28 U.S.C. § 137.

Judge Hull's October 30, 1989 order need not be vacated, however, because even a judge who has recused himself ought to be permitted to perform the duties necessary to transfer the case to another judge. *See In re Cement Antitrust Litigation (MDL No. 296)*, 673 F.2d 1020, 1024–25 (9th Cir. 1981) ("[W]e refuse to construe the word 'proceeding' to include the performance of ministerial duties such as assigning a case to another judge"). The April 24, 1989 order similarly involves ministerial duties and need not be vacated.

Aetna also argues that Judge Hull's April 3, 1989 order denying its motion for a consolidated trial and Judge Hull's April 9, 1990 order granting the FDIC partial summary judgment must be vacated. Respondent FDIC argues that *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 863–65, 108 S.Ct. 2194, 2203–05, 100 L.Ed.2d 855 (1988), permits a court to apply relief retroactively in certain circumstances. *Liljeberg* involved a Fed.R.Civ.P. 60(b) motion arguing that a final judgment ought to be vacated. Such a motion does not appear to have been made in the present case. At any rate, *Liljeberg* provided:

[I]n determining whether a judgment should be vacated for a violation of § 455(a), it is appropriate to consider the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other

cases, and the risk of undermining the public's confidence in the judicial process.

*Id.* at 864, 108 S.Ct. at 2204.

In the present case, the risk of undermining the public's confidence in the judicial process is significant. Permitting Judge Hull's partial summary judgment order to remain in spite of the fact that section 455(b)(5) warrants his disqualification would substantially undermine the public's confidence in the judicial process.[12] Further, his refusal to consolidate the cases for trial may be perceived by the public as an attempt by Judge Hull to retain at least some of the original seven cases. The risk of injustice to the parties if the orders were to remain intact is significant as well, for Judge Hull's disqualification is based upon an objective determination that presumably was codified due to the inherent threat of bias. Therefore, these orders should be vacated except with respect to the Knoxville case which has been tried. Consolidation is for the convenience of parties, witnesses, etc. To require the Knoxville case to be retried as part of a consolidated case would be to penalize the parties and witnesses and cause further injustice.

Finally, petitioner argues that Judge Hull participated in a discussion with Judge Siler and Judge Jordan that led to Judge Jordan's reinstatement of the January 16, 1990 trial date in the Knoxville case.[13] Respondent FDIC correctly replies that petitioner's proper recourse for a claim of bias against Judge Jordan would be a section 455(a) motion seeking to disqualify Judge Jordan. Therefore, Judge Jordan's order should not be vacated.

We do not intend to express any opinion concerning the merits of consolidation, or

severance, with regard to the seven cases in dispute. The petition for mandamus is GRANTED for the purposes stated, and the matter is REMANDED for further prompt proceedings in accordance herewith.

KENNEDY, Circuit Judge, concurring separately, with whom KEITH, NATHANIEL R. JONES, KRUPANSKY, RYAN, BOGGS and ALAN E. NORRIS, Circuit Judges, join.

■ I concur that mandamus is an appropriate remedy when a judge who is clearly disqualified denies a motion for disqualification. I write separately because I view the grounds requiring disqualification somewhat differently. Here Judge Hull's need to recuse himself was clear, his daughter was a lawyer in the consolidated proceedings. 28 U.S.C. § 455 provides in relevant part:

(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

.    .    .    .    .

(5) He or his spouse, or a person within the third degree of relationship to either them, or the spouse of such a person:

.    .    .    .    .

(ii) Is acting as a lawyer in the proceeding; ...

It is true that the firm for which Hull–Welsch worked did not and does not represent the FDIC in the UAB–Chattanooga or C & C Roane matters. However, the con-

---

**12.** The Seventh Circuit has held that "the position that provides the greatest measure of safety for the judicial system as a whole is one that vacates all decisions taken after the filing of a justified motion to disqualify a judge under § 455(a)." *New York City Dev. Corp. v. Hart,* 796 F.2d 976, 979 (7th Cir.1986). Although we have found that Judge Hull ought to have recused himself pursuant to § 455(b), that section involves an objective determination and is concerned with actual impropriety as well as the appearance of impropriety. Therefore, such a rule is equally applicable to § 455(b) motions.

The Seventh Circuit adopted this rule because "[i]t would be undesirable to consider case by case whether the post-motion orders of the judge should be set aside...." *Id.* Were such a rule adopted by this Court, the Court would be required to vacate the April 9, 1990 order.

**13.** To vacate Judge Jordan's order would require vacation of the final judgment in the UAB–Knoxville case as well. Such a judgment was entered in January 1990.

solidation of the cases, even if only for pretrial purposes, necessarily involves the entanglement of certain aspects of the Chattanooga and Roane matters with the cases in which Hull–Welsch's firm represented the FDIC.

The fact that Hull–Welsch's role in the cases was minimal is not dispositive, for the statute requires disqualification where she "[i]s acting as a lawyer in the proceeding" and does not indicate that minimal involvement would render disqualification unnecessary.[1] *See Union Carbide Corp. v. United States Cutting Serv., Inc.,* 782 F.2d 710, 714 (7th Cir.1986) ("Congress replaced [the previously existing standard with] a flat prohibition. Although the prohibition results in recusal in cases where the interest is too small to sway even the most mercenary judge, occasional silly results may be an acceptable price to pay for a rule that both is straightforward in application and spares the judge from having to make decisions under an uncertain standard apt to be misunderstood"). Thus it is clear that a violation of section 455(b)(5) would exist if Hull–Welsch had continued her employment at Morton, Lewis.

■ Respondent argues that Hull–Welsch's resignation from the law firm "cured" any section 455(b)(5) violation. I do not believe that the problem can be cured in such a manner. The depositions taken in the consolidated action are a part of the proceedings in each case even when the cases are no longer consolidated. A party should not be required to object to questions in depositions asked by members of the judge's family. Whether the depositions will be used or not, it is there to be used. Whether it will be important or not, it is there to become important. The statute contemplates a bright line test—if a person within the third degree of relationship to the judge or the judge's spouse is

acting as a lawyer in the proceeding, the judge is disqualified.

Section 455(f) is the only statutory provision permitting a trial judge to cure a disqualification. This section, enacted in 1988, provides:

Notwithstanding the preceding provisions of this section, if any justice, judge, magistrate, or bankruptcy judge to whom a matter has been assigned would be disqualified, after substantial judicial time has been devoted to the matter, because of the appearance or discovery, after the matter was assigned to him or her, that he or she individually or as a fiduciary, or his or her spouse or minor child residing in his or her household, has a financial interest in a party (other than an interest that could be substantially affected by the outcome), disqualification is not required if the justice, judge, magistrate, bankruptcy judge, spouse or minor child, as the case may be, divests himself or herself of the interest that provides the grounds for the disqualification.

28 U.S.C. § 455(f). Respondents do not contend that the employment of Hull–Welsch is covered by this provision. Hull–Welsch did not divest herself of a financial interest, but rather discontinued her employment. Further, the fact that Hull–Welsch worked for Martin, Lewis and that this firm was involved in the proceedings was not discovered "after substantial judicial time ha[d] been devoted to the matter" but rather was known at the outset of the proceedings when the judge initially recused himself. In fact, the existence of section 455(f) suggests that Congress intended to exclude the types of cure not permitted by this provision, for Congress had the opportunity to enact a broader amendment than it devised with section 455(f). Petitioner argues that section 455(f) was intended to apply to class action

---

1. Respondent FDIC contends that Hull–Welsch's only involvement with any of the seven cases was to attend one day of a five-day deposition of Mackie Sneed, an FDIC examiner. The FDIC contends that Sneed was principally deposed about his involvement in joint examinations of C & C–Knoxville and C & C–Washington in an

attempt to develop evidence related to the legally insufficient defenses of regulatory neglect and implicit misrepresentations subsequently stricken by Judge Siler. Judge Hull speaks of his daughter's "extremely limited presence in one or two depositions."

suits, and the legislative history seems to so suggest. *See* H.R. Doc. No. 889, 100th Cong., 2d Sess. 68–69 (1988). However, we need not determine whether this provision applies to cases other than class action suits because it has not been alleged in the present case that any of the possible grounds requiring recusal were discovered after substantial judicial time had been devoted to the matter.

At least where a lawyer has appeared at a deposition or made some other formal appearance in a proceeding, I would hold that such lawyer is a lawyer in the proceeding and a judge related within the third degree is disqualified.

I would find it unnecessary to reach the question of whether any other relationships required disqualification. *Moody v. Simmons,* 858 F.2d 137, 142 (3d Cir.1988), *cert. denied,* 489 U.S. 1078, 109 S.Ct. 1529, 103 L.Ed.2d 835 (1989).