**In re Marion S. BARRY, Petitioner.**

**No. 91–3255.**

United States Court of Appeals,
District of Columbia Circuit.

Sept. 26, 1991.

As Amended Oct. 8, 1991.

R. Kenneth Mundy and Adam Harris Kurland, Washington, D.C., on the motion for petitioner.

Jay B. Stephens, U.S. Atty., and John R. Fisher, Asst. U.S. Atty., Washington, D.C., were on the opposition to the motion for the U.S.

## ORDER

PER CURIAM.

Upon consideration of the emergency motion for stay and the opposition thereto and the emergency petition for writ of mandamus and the responses thereto, it is

ORDERED that the emergency petition for writ of mandamus be denied. Assuming a petition for writ of mandamus is the proper vehicle for obtaining review of the district court's refusal to recuse, petitioner has not made a "clear and indisputable" showing of entitlement to such relief. See *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 289, 108 S.Ct. 1133, 1143, 99 L.Ed.2d 296 (1988).

■ Defendant's motion for recusal was based on remarks made by the district judge at Harvard Law School after the original sentencing, in which he evidently asserted that he had never seen a stronger government case, that some jurors had their own agendas and would not convict under any circumstances, and that some jurors were determined to acquit regardless of the facts. The contention is that these remarks call for recusal under 28 U.S.C. § 455, which requires a judge to recuse himself "in any proceeding in which his impartiality might reasonably be questioned" or where "he has a personal bias or prejudice concerning a party." There is, of course, no doubt (1) that one determines a violation completely without regard to whether there exist adequate independent grounds for the judge's rulings, (2) that the appearance-of-partiality test is an objective one (whether an informed observer would reasonably question the judge's impartiality), and (3) that application of the test is wholly independent of whether the judge intends to act with bias or prejudice. In all these respects we agree entirely with the Dissent. See Dissent at 915–916, 916, 917–918.

■ As defendant recognizes, a trial judge is entitled to form his own judgment as to the conduct of a defendant and to take that judgment into account in sentencing. See, e.g., *United States v. Campbell*, 684 F.2d 141, 152–53 (D.C.Cir.1982) (pre-guidelines); Sentencing Guidelines §§ 1B1.3–.4 & Commentary (in determining sentencing range judge may consider conduct not an element of offense of conviction; in sentencing within range or departing from range, judge "may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law"). A judge's candid reflections of what he has inferred from the trial about the defendant's character and conduct simply do not establish bias or prejudice.

■ Defendant stresses, however, that the judge's remarks were extrajudicial in two senses: first, they were delivered in an extrajudicial capacity, and second, they relied (in part), he believes, on information coming from extrajudicial sources. But while the district judge's extrajudicial voicing of his views of the jury verdict may be a violation of the Code of Conduct for United States Judges, see Canon 3(A)(6) (1990) ("A Judge should abstain from public comment about a pending or impending proceeding in any court...."), any such violation does not necessarily create an appearance of personal bias or partiality such as to require recusal under 28 U.S.C. § 455. See *United States v. Haldeman*, 559 F.2d 31, 132–36 (D.C.Cir.1976) (*en banc*) (per curiam); see id. at 136 (an extrajudicial remark is "disqualifying only if it connotes a fixed opinion—'a closed mind on the merits of the case.'").

■ As evidence that the judge's views arose in part from extrajudicial sources, defendant cites the judge's observation in rejecting the motion for recusal that his remarks were "confirmed by public reports of interviews of several jurors appearing post-trial in the local press." To the extent that this shows reliance on extrajudicial sources, it appears to be limited to the judge's views of the jury, not the defendant. In any event, insofar as defendant assumes that any reliance on an extrajudicial source automatically establishes that the judge's opinion constitutes bias, our case law is clearly against him. See *SEC v. First City Financial Corp.*, 890 F.2d 1215, 1221–22 (D.C.Cir.1989) (though judge's disparagements of defendants cited newspaper articles in support, court applies *Haldeman* test). It is

FURTHER ORDERED that the emergency motion for stay be dismissed as moot.

The dissenting opinion of Judge Edwards is expressed in a separate statement appended to this Order.

**HARRY T. EDWARDS, Circuit Judge, dissenting:**

The petitioner seeks a writ of mandamus to compel the disqualification of a District Court Judge, who, after sentencing petitioner in a criminal proceeding, discussed the merits of the case in a public speech at Harvard Law School while the case was still pending appeal. Subsequently, the case was remanded to the trial judge for resentencing. Petitioner now asserts that the trial judge should be disqualified because there is an appearance of partiality.[1]

## I.

The Government, in opposition to this petition, has argued that, under the applicable statutory standard and prevailing case law, there has been no showing that the trial judge's "impartiality might reasonably be questioned." 28 U.S.C. § 455(a) (1988). If, as the Government appears to suggest, an order to disqualify can only be justified pursuant to a finding of "prejudice," and if the Government is right in assuming that "prejudice" requires proof that a judge's decision could in no event be justified on legitimate grounds, then the statutory standard for disqualification would be rendered a nullity. I find this a specious reading of the law.[2] Furthermore, the Govern-

1. There can be no serious question over the reviewability of this matter pursuant to mandamus. A majority of the circuits have made mandamus available, because "public confidence in the courts requires that such a question be disposed of at the earliest possible opportunity." *In re United States*, 666 F.2d 690, 694 (1st Cir.1981) (quoting *In re Union Leader Corp.*, 292 F.2d 381, 384 (1st Cir.), *cert. denied*, 368 U.S. 927, 82 S.Ct. 361, 7 L.Ed.2d 190 (1961)); *see also In re Aetna Casualty & Surety Co.*, 919 F.2d 1136, 1143 (6th Cir.1990) (en banc); *In re City of Houston*, 745 F.2d 925, 927 (5th Cir.1984); *In re IBM Corp.*, 618 F.2d 923, 926–27 (2d Cir.1980); *Bell v. Chandler*, 569 F.2d 556, 559 (10th Cir.1978); *SCA Servs., Inc. v. Morgan*, 557 F.2d 110, 117 (7th Cir.1977); *In re Rodgers*, 537 F.2d 1196, 1197 n. 1 (4th Cir.1976) (per curiam). *But see City of Pittsburgh v. Simmons*, 729 F.2d 953, 954 (3d Cir.1984) (mandamus not available to review district judge's refusal to recuse).

2. In *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988), the Supreme Court unanimously agreed that the test under section 455(a) was an objective one, requiring disqualification where there is "an appearance of partiality ... even though no actual partiality exists." *Id.* at 860, 108 S.Ct. at 2202–03 (quoting *Liljeberg*, 796 F.2d 796, 802 (5th Cir.1986)); *see also* 486 U.S. at 870–71, 108 S.Ct. at 2207 (Rehnquist, C.J., dissenting) (Section 455(a) "was drafted to replace the subjective standard of the old disqualification statute with an objective test. Congress hoped that this objective standard would promote public confidence in the impartiality of the judicial process by instructing a judge, when confronted with circumstances in which his impartiality could reasonably be doubted, to disqualify himself and allow another judge to preside over the case."); *Judicial Disqualification, Hearings on S. 1064 Before the Subcomm. on Improvements in Judicial Machinery of the Sen-*

*ate Comm. on the Judiciary*, 93d Cong., 1st Sess. 15 (1973) (Senators Burdick and Bayh, sponsors of the bill, stating that litigants would not be required to make an affirmative showing of actual prejudice).

*See also, e.g., United States v. Greenough*, 782 F.2d 1556, 1558 (11th Cir.1986) (per curiam) ("[T]he standard for determining whether a judge should disqualify himself under § 455 is an objective one, whether a reasonable person knowing all the facts would conclude that the judge's impartiality might reasonably be questioned."); *Union Carbide Corp. v. U.S. Cutting Serv., Inc.*, 782 F.2d 710, 715 (7th Cir.1986) (Under section 455(a) "the issue is whether 'an objective, disinterested observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt that justice would be done in the case.'") (quoting *Pepsico, Inc. v. McMillen*, 764 F.2d 458, 460 (7th Cir.1985)); *United States v. DeLuna*, 763 F.2d 897, 907 (8th Cir.) ("Disqualification is appropriate only if the facts provide what an objective, knowledgeable member of the public would find to be a reasonable basis for doubting the judge's impartiality."), *cert. denied*, 474 U.S. 980, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985); *In re Khan*, 751 F.2d 162, 164 (6th Cir.1984) ("[Section 455(a)] establishes an objective standard, so that a judge should disqualify himself only if there is a reasonable factual basis for doubting his impartiality.") (citations omitted).

*Cf. United States v. Heldt*, 668 F.2d 1238, 1277 & n. 83 (D.C.Cir.1981) (Defendant must show that the prosecutor actually was biased to warrant reversal. But, "[t]his case, involving an alleged conflict of interest on the part of the prosecution, is to be distinguished from cases in which the burden of showing actual prejudice is typically not imposed. The cause for concern here is not on a par with that present in a case where the defendant[ ] ... is tried before a judge with an interest in the result. In such

ment's proposed test for disqualification under section 455(a) would produce a ridiculous result. Under this test, even a judge who is admittedly biased against a litigant can avoid condemnation under the statute so long as the judge's action can be justified on other grounds. I would have thought that, especially in a criminal case, inquiries into allegations of "prejudice" might consider the integrity of the process used to convict and sentence a defendant. *See also* note 2 *supra.*

The simple point is that the test to assess the question of disqualification under section 455(a) is an objective one, *i.e.,* whether the facts "might reasonably cause an objective observer to question [the judge's] impartiality," *Liljeberg,* 486 U.S. at 865, 108 S.Ct. at 2205, not a subjective one focusing on bias or prejudice. The structure of the statute makes this absolutely clear. Section 455(a) provides generally that, "[a]ny justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned," while section 455(b)(1) specifically addresses prejudice, "(b) He shall also disqualify himself in the following circumstances: (1) where he has a personal bias or prejudice concerning a party...." Reading a "prejudice" test into section 455(a) makes that subsection redundant with section 455(b)(1). *See also Liljeberg,* 486 U.S. at 860 n. 8, 108 S.Ct. at 2202 n. 8 ("Section 455(b) is therefore a somewhat stricter provision [in that waiver by the parties is not permitted], and thus is not simply redundant with the broader coverage of section 455(a)....").

The legislative history surrounding section 455 provides further evidence that a prejudice test is unwarranted in subsection (a). As the Supreme Court noted in *Liljeberg,* Congress amended section 455 in 1974 "to clarify and broaden the grounds for judicial disqualification and to conform with the recently adopted ABA Code of Judicial Conduct, Canon 3C (1974)." 486 U.S. at 858 n. 7, 108 S.Ct. at 2201 n. 7

(citing S.REP. No. 419, 93d Cong., 1st Sess. (1973); H.R.REP. No. 1453, 93d Cong., 2d Sess. (1973)). Canon 3C is clear that the two grounds for disqualification are not redundant:

> (1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, *including but not limited to* instances where:
>> (a) he has a personal bias or prejudice concerning a party....

ABA Code of Judicial Conduct, Canon 3 C(1) (1974), *reprinted in* S.REP. No. 419 at 3–4; H.R.REP. No. 1353 at 4 (emphasis added).

There was no proven bias or prejudice in *Liljeberg,* yet the Supreme Court upheld the Court of Appeals order disqualifying the judge because of an *appearance of partiality.*

> Like the Court of Appeals, we accept the District Court's finding that while the case was actually being tried Judge Collins did not have actual knowledge of [his] interest in the dispute.... When a busy federal judge concentrates his or her full attention on a pending case, personal concerns are easily forgotten. The problem, however, is that people who have not served on the bench are often all too willing to indulge suspicions and doubts concerning the integrity of judges. The very purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible. Thus, it is critically important in a case of this kind to identify the facts that might reasonably cause an objective observer to question Judge Collins' impartiality.

486 U.S. at 864–65, 108 S.Ct. at 2204–05 (footnote and citations omitted).

In this case, a reasonable person confronted with the facts, *i.e.,* that a trial judge appeared in a public forum during the pendency of a criminal case to discuss the merits of the case and to criticize the jury and the defendant who had appeared

cases, the rights at stake are so fundamental that even if no actual prejudice is shown, reversal is required.") (citations omitted), *cert. de-*

*nied,* 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982).

before him in the criminal trial, would question whether the judge could sentence the defendant with impartiality.

## II.

Furthermore, although it is not a matter directly before us, it is worth noting that the District Court Judge could have recused himself in this case.* If this option had been followed, the question of disqualification under section 455(a) would have been moot. I recognize that the wisdom of the judge's failure to recuse himself is debatable.[3] I also understand that no judge prefers to face a situation where he must admit error, and surely no judge wishes to acknowledge an "appearance of impropriety" that might raise a question about his impartiality. And when, as in this case, a trial judge has presided over a hotly litigated, controversial, prolonged and highly visible trial, and has pursued his responsibilities with diligence and honesty, the judge well may be reluctant to leave the case at its last stage on a claim of "appearance of impropriety." Nonetheless, in my view, the recusal option was a compelling one in this case.

The Code of Conduct for United States Judges, Canon 3A(6) (1990), states that "[a] judge should abstain from public comment about a pending or impending proceeding in any court, and should require similar abstention on the part of court personnel subject to the judge's direction and control." *See also* Advisory Opinion No. 55 (1977) (making it clear that the prohibition against commenting on a pending case continues at least through final disposition of the case). The Canon allows a judge to "explain[ ] for public information the procedures of the court," Canon 3A(6); however, the Canon is clear in indicating that a judge *never may discuss the merits of a pending case in a non-judicial forum, especially when he has reason to know that the parties to the litigation may appear before him again for further judgment in the case.* Indeed, in my view, this principle is so straight-forward and unequivocal under the Code of Conduct that its breach will almost always give rise to a legitimate claim for disqualification under section 455(a).

The integrity of the judicial process would be seriously doubted if judges were free to air their views on pending cases outside of the appropriate judicial forum. Whenever such an occurrence arises, a judge should recuse himself to protect the sanctity of the judicial process.[4] It does not matter whether the judge *intends* to act with bias or otherwise to prejudice the

---

* This paragraph and the next one have been modified since the initial issuance of the order and dissent disposing of the petition for mandamus. The purpose of this modification is to clarify the relationship between section 455(a) and the Code of Conduct for United States Judges. The point to be made is that, while ethics standards under the Code may inform dispositions under section 455(a), the standards of conduct under the Code are not directly enforced through section 455(a). For the most part, the Code is enforced through self-regulation by individual judges.

**3.** Canon 3 A(6) of the Code of Conduct for United States Judges says that "[a] judge should abstain from public comment about a pending or impending proceeding in any court." Canon 3 C(1) says that "[a] judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned." The latter Canon indicates that instances of disqualification "includ[e] but [are] not limited to" cases involving judicial bias, prejudice or personal knowledge of the facts;

cases in which the judge or former associates of the judge have served as legal counsel in the matter; and cases in which the judge has a financial or other interest in the matter. It might be argued that because "public comment" on a pending case is not an enumerated instance of disqualification, the breach of this provision should not be an automatic basis for disqualification. On the other hand, the proscription against commenting on the merits of a pending case in a non-judicial forum is absolutely unequivocal and, thus, arguably, should be viewed as one of the unenumerated bases for disqualification.

**4.** As the Court noted in *Liljeberg*,

[P]eople who have not served on the bench are often all too willing to indulge suspicions and doubts concerning the integrity of judges.... [Recusal] promote[s] confidence in the judiciary by avoiding even the *appearance of impropriety* whenever possible.

486 U.S. at 864–65, 108 S.Ct. at 2204–05 (emphasis added).

defendant.[5] What matters is that there has been a breach of a code of conduct by an officer of the court such that the integrity of the process has been called into question. That is enough to warrant recusal.

**5.** *See* Code of Conduct for United States Judges, Canon 2 (1990) ("A Judge Should Avoid Impropriety and the Appearance of Impropriety in All of the Judge's Activities."); *United States v. Haldeman,* 559 F.2d 31, 132 n. 297 (D.C.Cir. 1976) (en banc) (per curiam) ("'any tribunal permitted by law to try cases and controversies not only must be unbiased but also must avoid the appearance of bias'") (quoting *Commonwealth Coatings Corp. v. Continental Cas. Co.,* 393 U.S. 145, 150, 89 S.Ct. 337, 340, 21 L.Ed.2d 301 (1968)), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977). It is also noteworthy that the Court in *Liljeberg* explicitly held, "Scienter is not an element of a violation of § 455(a)." 486 U.S. at 859, 108 S.Ct. at 2202.